NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0101n.06

No. 12-5350

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAY JOHNSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| BELLSOUTH | ) | |
| TELECOMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff-appellant Jay Johnson appeals the district court's grant of summary judgment to BellSouth Telecommunications, Inc. ("BellSouth") on Johnson's retaliatory discharge claim under the Tennessee Public Protection Act and his claims of intentional and negligent infliction of emotional distress.  For the following reasons, we affirm.

I.

BellSouth employed Johnson as a Small Business Sales Associate from January 2006 until July 1, 2008.  His primary responsibilities included customer service and sales.  Sales associates' performance was measured by a single score, calculated using various sales data.  A score of less than 100 percent was considered less than satisfactory, 100 percent to 119.99 percent was considered satisfactory, and 120 percent and above was considered more than satisfactory.  Sales associates were given annual performance reviews, in addition to monthly report cards showing their year to date

performance rating. BellSouth also provided employees with a document called the "Daily Dollar" that tracked their sales performance on a daily basis compared to targets for the month. Johnson achieved a 90.57 percent score in 2006 and a 98.53 percent score in 2007, resulting in a "less than satisfactory" performance evaluation each year. After receiving his 2006 report card, Johnson and Crystal Manning, the team manager, spoke about how Johnson could improve his performance.

Johnson claims that during his employment, BellSouth instructed him to engage in illegal and unethical practices. In January 2008, Johnson wrote a letter to BellSouth's legal department complaining of these practices. For example, he claimed that sales associates were adding unlimited long distance to customer accounts for a free trial period without informing customers that they had to contact BellSouth at the end of the trial period to prevent further billing for this service. Johnson also asserted that managers listened to sales associates' calls with customers and encouraged the sales associates to add services to customer accounts without customers' permission. At the end of his letter, Johnson asked to remain anonymous because he was concerned that he would be retaliated against. Johnson claims that he told Manning that he was going to send this letter and "Manning warned [him] that [he] would be retaliated against for sending such a letter." Prior to writing this letter, Johnson claims that he met with Manning, Todd Hliva, BellSouth's branch manager, and Wanda Watkins, a team manager, "to discuss the unethical behavior of adding services to customers' accounts without their permission."

On February 7, 2008, Manning held an informal discussion with Johnson to discuss his less than satisfactory sales performance. Manning also provided Johnson with a plan to improve his performance until April 30, 2008. Manning met with Johnson again on April 9, 2008, to discuss his failure to read the "parting shot" to customers. At the meeting, Johnson was given a "corrective

action plan" with monthly goals to achieve until July 31, 2008. Several weeks later, Johnson received a written disciplinary action for failing to call a supervisor or manager to approve the removal of services from customers' accounts. Because of this disciplinary action, Johnson received a performance score of less than zero for the month. Johnson claims that he called a supervisor to approve the removal of services and that he filed a grievance for the false accusation.

Manning met with Johnson again on May 6, 2008, to inform him that his performance continued to be unsatisfactory and that if he did not improve, BellSouth could take more severe disciplinary action, including termination. On June 3, 2008, Johnson received a letter in lieu of suspension because of his unsatisfactory performance. Johnson and Manning met again on July 1, 2008, and he was terminated at that meeting. The personnel record states that his termination was caused by his "continued unsatisfactory job performance."

Johnson alleges that he was terminated because he complained of BellSouth's unethical and illegal sales practices. He points out that he never received any discipline because of his low sales performance until February 2008, after he sent the letter to BellSouth's legal department. Although Johnson concedes that his sales performance was low, he attributes this to his refusal to engage in unethical and illegal sales practices. Johnson also claims that other employees with less than satisfactory sales performance were not terminated, demonstrating that he was terminated because of his complaints of illegal activity and not because of his performance.

In response, BellSouth claims that he was terminated because of his unsatisfactory sales performance. BellSouth relies on Johnson's deposition testimony where he said that his sales performance caused his termination, at least in part. For example, when asked if he felt like his job was in jeopardy in 2008 because of his sales performance, Johnson stated: "I felt that the low sales

numbers helped aid in my termination." BellSouth also points to the following exchange from Johnson's deposition: "Q. Do you think your poor sales performance played any role in the decision? A. I believe it played a role. Q. On a percentage basis, do you think it played a 100 percent role or a 1 percent role? You can pick anything in between there. . . . A. 1 percent."[1]

## II.

When granting summary judgment to BellSouth on Johnson's retaliatory discharge claim, the district court found that Johnson could not establish that he was terminated *solely* because of his complaints of illegal activity. It determined that "[t]he undisputed evidence in the record establishes valid and legitimate reasons for BellSouth to have terminated Johnson's employment for failure to meet his sales objectives." The district court rejected Johnson's argument that a jury could find that his discharge was caused by his complaints of illegal activity because although he failed to meet his sales objectives in 2006 and 2007, he was not disciplined until shortly after he sent the letter. It explained that proximity in time between the protected activity and the termination is not sufficient evidence to establish a causal relationship. Even if Johnson had established a *prima facie* case of retaliatory discharge, the district court found that Johnson did not provide sufficient evidence to raise a genuine issue of material fact as to whether his poor performance was merely a pretext for his termination. Specifically, Johnson offered evidence that other employees had less than satisfactory performance but were not terminated, but the court noted that Johnson did not provide evidence showing that these employees consistently failed to meet their sales objectives for a three-year

---

[1]In response to BellSouth's reliance on this comment, Johnson states that "[w]hen asked what percentage between 1% and 100% the sales numbers played, I said 1%. This range was what was asked and I simply chose the lowest number because I believe that the reason for my termination was because of my complaints of unethical and illegal conduct."

period. Moreover, the court maintained that Johnson could not show that Hliva, who decided to terminate Johnson, knew that Johnson wrote a letter to BellSouth's legal department.

The district court also granted summary judgment to BellSouth on Johnson's intentional and negligent infliction of emotional distress claims. The court held that even if Johnson proved that he was terminated because of his complaints about BellSouth's sales practices, such conduct is not so outrageous as to be considered tortious. The district court also concluded that there was no evidence that Johnson suffered severe mental injury, as required for both the intentional and negligent infliction of emotional distress claims. Finally, the court noted that Johnson did not address BellSouth's claim that he could not recover under his theory of negligent infliction of emotional distress because Johnson did not show that BellSouth breached any duty owed to him. The court therefore granted BellSouth judgment as a matter of law as to all of Johnson's claims.

III.

We review a district court's grant of summary judgment *de novo*. *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). We must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV.

The Tennessee Public Protection Act ("TPPA") provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (2012). To establish a claim for retaliatory discharge under the TPPA, a plaintiff must prove: (1) his status as an employee of the defendant; (2) his refusal to participate in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal relationship between the refusal to participate in, or remain silent about, illegal activities and his termination. *Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp. 2d 848, 862 (E.D. Tenn. 2006). As the Tennessee Supreme Court has explained, the plaintiff must "demonstrate that his whistleblowing behavior was the *sole* reason for his termination." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002). If the plaintiff establishes a *prima facie* case of retaliatory discharge under the TPPA, then the burden shifts to the defendant to prove a legitimate nondiscriminatory reason for the discharge. *Provonsha v. Students Taking a Right Stand, Inc.*, No. E2007-00469-COA-R3-CV, 2007 WL 4232918, at *4 (Tenn. Ct. App. Dec. 3, 2007). The burden then shifts back to the plaintiff to show that the defendant's proffered reason is a pretext. *Id.* The plaintiff can demonstrate pretext by showing that the proffered reason has no basis in fact, did not actually motivate the termination, or was insufficient to motivate the termination. *Id.*

We find that the district court properly granted summary judgment to BellSouth on Johnson's TPPA claim because taking the evidence in the light most favorable to Johnson, it does not support a reasonable jury verdict in his favor. First, Johnson points out that he was only disciplined after sending the letter, despite having received less than satisfactory scores prior to that date. As the district court recognized, however, proximity in time is not sufficient to show causation. *Austin v.*

*Shelby Cnt'y Gov't*, 3 S.W.3d 474, 481 (Tenn. Ct. App. 1999). It is also relevant that Johnson sent the letter in January 2008 but was not terminated until July 2008, more than six months later. During the interim, BellSouth created a plan for Johnson to improve his performance, but he failed to do so. The timing of Johnson's termination relative to the date he sent the letter is insufficient to create a genuine issue of material fact for trial.

Next, Johnson asserts that Manning was aware that Johnson wrote the letter to BellSouth's legal department and told Johnson that he would be retaliated against. Even if this is true, Manning testified that she had no influence over the decision to terminate Johnson. Rather, Hliva testified that he decided to terminate Johnson. Johnson provides no evidence to challenge these assertions. Accordingly, Manning's awareness of Johnson's complaint to the legal department cannot lead a rational trier of fact to conclude that Johnson was terminated as retaliation for writing the letter.

Johnson also claims that employees Lisa Born, Stephen Holiway, and Amber Johnson consistently failed to meet their sales objectives but were not terminated. This demonstrates, according to Johnson, that his termination was caused by his complaints rather than his poor performance. The evidence shows that Lisa Born received letters in lieu of suspension from March 2007 until October 2008. However, there is no evidence of Born's performance scores or whether they were improving or declining over time. In short, there is insufficient information for a reasonable jury to conclude that Johnson's situation was analogous to Born's. The same is true of Stephen Holiway and Amber Johnson. The evidence merely shows that Holiway received letters in lieu of suspension in May 2007 and August 2008. Amber Johnson received informal discussions in September and December 2007 and January and March 2008, but, again, there is little information

about her sales performance and its pattern over time. As a result, a reasonable jury could not rely on these facts to conclude that Johnson was terminated solely because of his complaints.

Johnson further argues that Hliva knew about Johnson's complaints of illegal practices and his letter to BellSouth's legal department. However, Johnson offers only his speculation that Hliva knew about the letter, and does not provide any evidence to support such an inference. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) ("[Plaintiff] offers only conspiratorial theories, not specific facts required under Federal Rule of Civil Procedure 56.") Even if Hliva did not know about the letter, Johnson claims that during his employment, he expressed his concerns about illegal behavior to Hliva and specifically mentioned adding services to customer accounts without their permission. Accepting this as true, a reasonable jury could find that Johnson engaged in protected activity by refusing to remain silent about illegal practices, that Hliva knew of Johnson's protected activity, and that Hliva terminated Johnson. But there is not sufficient evidence in the record for a reasonable jury to find that Johnson's protected activity was the *sole* reason he was terminated. "Evidence of causation requires more than the facts showing employment, the exercise of rights, and a subsequent discharge. It requires direct evidence or compelling circumstantial evidence." *See Smith v. CR Bard, Inc.*, 730 F. Supp. 2d 783, 800 (M.D. Tenn. 2010) (quoting *Provonsha*, 2007 WL 4232918, at *5–6). In this case, there is no direct evidence of exclusive causation and the circumstantial evidence (*e.g.*, the timing of his termination relative to his complaints, Manning's comment that he would be retaliated against, other employees not being fired) is not compelling and therefore does not create a genuine issue of material fact.

Next, Johnson challenges the district court's finding that even if he established a *prima facie* case of retaliatory discharge, he failed to create a genuine issue of material fact as to whether the

proffered reason was pretext. In doing so, Johnson relies on several facts that he cited in attempting to make a *prima facie* case of retaliatory discharge, including the timing of his discharge relative to his complaints, Manning's comment that he would be retaliated against, and other employees' poor performance. Just as these facts are insufficient to create a genuine issue for trial as to whether Johnson established a *prima facie* case of retaliatory discharge, they likewise fail to create a genuine issue as to whether BellSouth's proffered reason was pretext.

Johnson also notes that he was given a corrective action plan, which outlined performance goals through July 31, 2008, but was terminated on July 1, 2008. Johnson asserts that during this time he made improvements that Manning recognized. Specifically, Manning wrote Johnson a note on June 2, 2008, which states: "Jay, 5 dsl units on the first day of the month! What more can I say! Fantastic! Most of all, thank you for bringing humor to the team!" Another note, dated June 26, 2008, states: "Jay, I have enjoyed working with you and I look forward to continuing to work w/ you! You are a brilliant person!" Johnson claims these notes demonstrate that BellSouth did not fire him because of his poor performance. However, as discussed earlier, Manning had no authority over Johnson's termination. Additionally, these notes do not show that Johnson's overall performance had improved; they merely show encouragement by Manning. BellSouth was also under no obligation to retain Johnson until he completed the corrective action plan. At Johnson's May 6, 2008 meeting, he was informed that if his performance continued to be unsatisfactory, BellSouth could take more severe disciplinary action, including termination. In sum, taking the facts in the light most favorable to Johnson, a reasonable jury could not find that Johnson made a *prima facie* case of retaliatory discharge or that BellSouth's stated reason for terminating him was pretext.

V.

Finally, we turn to Johnson's intentional and negligent infliction of emotional distress claims. To establish a claim of intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Negligent infliction of emotional distress requires proof of (1) a duty of care; (2) breach of the duty of care by the defendant; (3) injury; (4) causation in fact; and (5) proximate causation. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). The plaintiff must also prove that his or her emotional distress was "serious" or "severe." *Eskin v. Bartee*, 262 S.W.3d 727, 735 (Tenn. 2008).

Johnson's entire argument challenging the district court's grant of summary judgment on the intentional and negligent infliction of emotional distress claims consists of the following: "Based on the conduct described above, a reasonable jury also could find that defendant subjected plaintiff to conduct that was extreme and outrageous and that plaintiff suffered serious mental injury as a result. Therefore the District Court erred by granting summary judgment on this claim as well." First, we find that Johnson has waived his challenge to the district court's ruling on these two claims because Johnson made no effort at "developed argumentation." *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

Even if Johnson had not waived this challenge, we find upon review of the record that Johnson did not provide any evidence for a reasonable jury to return a verdict in his favor on these claims. We agree with the district court's conclusion that even if BellSouth terminated him because he reported BellSouth's allegedly illegal practices to its legal department, this does not constitute

-10-

conduct so outrageous that it is not tolerated in a civilized society. *Rogers*, 367 S.W.3d at 205. Moreover, Johnson did not present any evidence that he suffered severe mental injury or explain what duty BellSouth owed to Johnson that it breached by its termination.

VI.

For the reasons provided above, we affirm the district court's order granting summary judgment to BellSouth on all of Johnson's claims.