NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0460n.06

Case No. 21-5289

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BILL SOURINHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| RICH PRODUCTS CORPORATION, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | **OPINION** |
| | ) | |

**FILED**
Oct 12, 2021
DEBORAH S. HUNT, Clerk

BEFORE: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Bill Sourinho warned his employer that a shooting was imminent. A colleague was about to bring a gun to kill him at work—or so he claimed. But the police didn't find any guns, and the threat never materialized. Following an investigation, Rich Products Corporation fired Sourinho. In response, Sourinho filed a lawsuit alleging retaliatory discharge under the Tennessee Public Protection Act, which the trial court dismissed on summary judgment. He now appeals. But Rich Products has articulated non-retaliatory reasons for terminating Sourinho. And no countervailing evidence has been presented to suggest pretext. Thus, Sourinho's claim fails as a matter of law, and we AFFIRM.

I.

Bill Sourinho began working at Rich Products Corporation's Murfreesboro, Tennessee facility on March 7, 2015. Rich Products hired him to clean its production equipment. In the years

since, Sourinho developed something of a track record. Between 2016 and 2017, he made three sets of allegations against his co-workers, each of which turned out to be uncorroborated.

The first was in July 2016. Sourinho claimed that a co-worker pushed a stack of cardboard boxes at him and drew back his fist as if to throw a punch. Rich Products investigated. But because there were no witnesses or other corroborating evidence, it closed the case. Then in April 2017, Sourinho accused a second co-worker of pulling him off his pallet jack and throwing away his shift-swap preference sheet. But again, no witnesses were available to corroborate. At this point, Rich Products' human resources manager (Michael Tait) admonished Sourinho about making unsubstantiated accusations. He warned Sourinho that Rich Products was "seeing a pattern of unproven allegations," and Sourinho "need[ed] to be sure that when he comes to [Rich Products] with a complaint, it's factual." (R. 20-1, Tait Dep., PageID 126.) A third co-worker was added to the mix in June 2017. Sourinho alleged that the co-worker threatened to cut him with a knife after preventing him from grabbing a soda during a company cookout. This time, there were three witnesses. Tait interviewed each of them and concluded that Sourinho "wasn't being truthful" and "that he may have exaggerated or provided [Rich Products] some misleading statements." (R. 20-1, Tait Dep., PageID 127.) Tait warned Sourinho again but stopped short of firing him.

The crux of this case concerns a fourth allegation. At work, Sourinho was friendly with a colleague named Sangchane Chanthavong ("Sangchane"). Sangchane's husband, Kitanh Chanthavong ("Kit"), also worked for Rich Products, as a production operator. On February 7, 2018, Sangchane told Sourinho that Kit thought the two of them were involved in an affair. And she warned Sourinho that Kit had threatened to kill him. Sourinho and Shangchane reported the threat to the Murfreesboro Police Department ("MPD"). MPD interviewed the two of them and prepared a report dated February 9, 2018. A few days later, on February 13, an MPD detective

called and informed a shift manager at Rich Products that Sourinho, Sangchane, and Kit had been involved in a domestic dispute.

The next day (February 14, 2018), things quickly escalated. Sourinho claims that Sangchane warned him in the morning that Kit might be bringing a gun to work. Sourinho showed up to work that same day anyway. He went to his shift manager and told him that Kit had threatened to come to work with a gun and a gas can. What's more, Sourinho claimed that Kit was planning to kill him and Sangchane and burn their bodies. In response, Rich Products called MPD. Two MPD officers met Kit in the lobby as he arrived for work. They searched Kit's person, lunchbox, and car. But they didn't find any weapons or gas cans. Rich Products suspended Sourinho, Sangchane, and Kit pending an investigation.

Tait handled the investigation. He obtained and reviewed the original February 9 police report. And together with a union representative and a second human resources staffer, Tait interviewed Sourinho, Sangchane, and Kit. Sourinho claimed that Sangchane had warned him specifically about Kit's purported plans to shoot the two of them and burn their bodies. Sangchane, meanwhile, gave inconsistent answers. At first, she told her interviewers that Kit had never even threatened Sourinho in the first place. But in a second interview, she claimed that although Kit *did* threaten to kill her and Sourinho, he never mentioned a gun or gas can. As for Kit, he denied making any threats against Sourinho and Sangchane. He admitted, however, that he had threatened to kill *himself* to keep Sangchane from leaving him.

Tait reviewed this evidence and determined that "the statements that [Sourinho] made and Sangchane made were in total conflict with each other." (R. 20-1, Tait Dep., at PageID 138.) And he concluded that "Kit's statements were pretty darn consistent." (*Id.*) Based on the investigation, Rich Products terminated both Sourinho and Sangchane for violating Rule 14 of its Standard of

Conduct: "gross misconduct that is detrimental to the image of Rich Products." (*Id.* at PageID 120, 139, 205.) With regard to Sourinho, Rich Products took his history of unsubstantiated allegations into account when it made its decision. Asked to explain how Sourinho's actions were detrimental to Rich Products' image, Tait explained:

> [T]hink about the times and think about what happens in workplaces and think about what happens in schools. . . . We had the police come out to the facility. . . . And then of course the whole plant, the rumor mill starts. And people get distracted, and no telling how these different rumors circulate.

(*Id.* at PageID 121.) Sourinho lodged a complaint with his union. But the union agreed that Sourinho and Sangchane's stories didn't add up. And so it declined to pursue the matter further.

Sourinho sued his former employer in Rutherford County, Tennessee alleging retaliatory discharge in violation of the Tennessee Public Protection Act. Rich Products removed the case on diversity grounds to the United States District Court for the Middle District of Tennessee. Following discovery, Rich Products moved for summary judgment, which the district court granted. Sourinho appealed.

## II.

We review the district court's grant of summary judgment de novo. *Little Caesar Enters. v. Oppco*, 219 F.3d 547, 550 (6th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our task here is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In undertaking this inquiry, we "must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party." *Little Caesar*, 219 F.3d at 551. But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

III.

Sourinho brought his claim under the Tennessee Public Protection Act ("TPPA"). The TPPA was "enacted to protect employees from being discharged in retaliation for 'blowing the whistle' on infractions of rules, regulations, or the law pertaining to the health, safety, and general welfare of the public." *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002). It provides that "[n]o employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50–1–304(b) (emphasis added). More specifically, a retaliatory discharge claim under the TPPA has four elements:

(1) The plaintiff was an employee of the defendant;

(2) The plaintiff refused to participate in or remain silent about illegal activity;

(3) The defendant employer discharged or terminated the plaintiff's employment; and

(4) The defendant terminated the plaintiff's employment *solely* for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Williams v. City of Burns*, 465 S.W.3d 96, 111 (Tenn. 2015) (emphasis added).

The word "solely" does much of the heavy lifting here. Indeed, as the Tennessee Supreme Court has recognized, the TPPA specifically "increases the burden of proof to require the plaintiff to demonstrate that his whistleblowing behavior was the *sole* reason for his termination, in contrast with the 'substantial factor' requirement of the common law." *Guy*, 79 S.W.3d at 537. Put another way, there must be "an *exclusive* causal relationship between the refusal to participate in, or remain silent about, illegal activities and [the employee's] termination." *Amos v. McNairy County*, 622 F. App'x 529, 536 (6th Cir. 2015) (emphasis added). Thus, a plaintiff "can prevail . . . 'only if he

. . . can prove that his . . . refusal to participate in or remain silent about illegal activities was the *only* reason for the termination.'" *Jones v. City of Union City*, No. CC-12-CV-84, 2015 WL 9257815, at *6 (Tenn. Ct. App. Dec. 17, 2015) (quoting *Williams*, 465 S.W.3d at 110-11) (emphasis added).

This is where Sourinho runs into trouble. Since the TPPA requires an "exclusive causal relationship," *Amos*, 622 F. App'x at 536, a defendant can rebut a plaintiff's claim simply by "articulat[ing] a non-retaliatory reason for [the plaintiff's] discharge." *Williams*, 465 S.W.3d at 115. To that end, the defendant "need not proffer evidence that unlawful retaliation was no part of its decision to terminate employment." *Id.* All that is necessary is for the defendant to "introduce admissible evidence showing that . . . . even if retaliation was motivation for the discharge, there was at least one non-retaliatory reason as well." *Id.*

Here, Rich Products has done just that.[1] It has presented evidence to support at least three non-retaliatory motives. First, the evidence suggests that Rich Products was concerned about the reputational impact of Sourinho's actions. No one disputes that Rich Products told Sourinho he was being fired for violating Rule 14 of its Standard of Conduct: "gross misconduct that is detrimental to the image of Rich Products." (R. 20-1, Tait Dep., PageID 120, 139, 205.) And Tait testified that Rich Products was worried about getting its business reputation mixed up with

---

[1] We note that Sourinho has the initial burden of establishing a prima facie case. *Johnson v. BellSouth Telecommunications, Inc.*, 512 F. App'x 566, 570 (6th Cir. 2013) ("If the plaintiff establishes a *prima facie* case of retaliatory discharge under the TPPA, *then* the burden shifts to the defendant to prove a legitimate nondiscriminatory reason for the discharge." (emphasis added)). But we need not decide whether Sourinho has met this initial burden, since Rich Products' non-retaliatory motives are fatal to Sourinho's claim in any event. Suffice to say, the application of the *McDonnell Douglas Corp. v. Green* burden-shifting regime to the TPPA context raises some unique complexities. 411 U.S. 792 (1973). What exactly it would take for a plaintiff to make an initial showing that retaliation was the *sole* motive is less than clear. And the sole motive test creates uncomfortable overlaps between the different steps of the burden-shifting inquiry.

narratives about workplace shootings. Second, the evidence shows that Rich Products thought Sourinho had lied. Tait performed an investigation after the February 14, 2018 incident. He reviewed the original February 9, 2018 police report and interviewed Sourinho, Sangchane, and Kit. With this investigation complete, Tait concluded that Kit's account of the facts was "pretty darn consistent." (R. 20-1, Tait Dep., at PageID 138.) As for Sourinho and Sangchane, Tait found their stories to be "in total conflict with each other." (*Id.*) Third, and relatedly, Rich Products considered Sourinho's history of uncorroborated allegations when deciding whether to terminate. Rich Products thought it might have a serial prevaricator on its hands. Indeed, Sourinho made unsubstantiated allegations against co-workers three different times prior to 2018.

Rather than engage more directly with the "exclusive causal relationship" question, Sourinho tries to apply an irrelevant causation standard. He cites cases for the proposition that "[t]he closeness in time between [Rich Products'] learning about [Sourinho's] protected activity and the adverse action ***alone is sufficient*** to create a jury issue on causation as a matter of law." (Appellant Br. at 12.) But these cases don't involve the TPPA.[2] And, importantly, none of the statutes implicated in these cases asks whether an employee was terminated *solely* for engaging in protected activity. These other statutes only require "*a* causal connection"—a materially lower bar. *Singfield*, 389 F.3d at 563 (emphasis added); *Allen,* 240 S.W.3d at 819 (emphasis added); *see Asmo*, 471 F.3d at 592 (requiring "a nexus"). In any event, we have held that "proximity in time is not sufficient to show causation" in the TPPA context. *Johnson*, 512 F. App'x at 570.

---

[2] Sourinho cites three cases here. *Singfield v. Akron Metropolitan Housing Authority* is about Title VII retaliation. 389 F.3d 555 (6th Cir. 2004). *Asmo v. Keane, Inc.* involves a Title VII pregnancy discrimination claim. 471 F.3d 588 (6th Cir. 2006). And *Allen v. McPhee* concerns the Tennessee Human Rights Act. 240 S.W.3d 803 (Tenn. 2007).

Once the defendant has articulated a non-retaliatory motive, the plaintiff can still save his TPPA claim by "show[ing] that the defendant's proffered reason is a pretext." *Id.* at 570. Pretext can be established in one of three ways: "by showing that the proffered reason [1] has no basis in fact, [2] did not actually motivate the termination, or [3] was insufficient to motivate the termination." *Id.*

Sourinho argues the first of these. He claims to have "show[n] that there was no basis in fact for [Rich Products'] termination decision." (Appellant Br. at 16.) But even if he has, his pretext argument fails. That's because caselaw counsels us to apply an "honest belief" rule here. *See, e.g.*, *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("This court has adopted an 'honest belief' rule with regard to an employer's proffered reason for discharging an employee"); *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030-31 (6th Cir. 2010); *McDonough v. Memphis Radiological Prof'l. Corp.*, No. 04-2697STA-TMP, 2009 WL 2179538, at *11 (W.D. Tenn. July 22, 2009) (applying the "honest belief" rule to the TPPA-specific context); *Hubrig v. Lockheed Martin Energy Sys., Inc.*, No. 03A01-9711-CV-00525, 1998 WL 240128, at *8 (Tenn. Ct. App. May 4, 1998) (same).

The rule says that so long as an employer honestly believes its proffered motive, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski*, 274 F.3d at 1117. In other words, the plaintiff "must allege more than a dispute over the facts upon which his discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). But the "honest belief" rule isn't without limits. "[A]n employee can still overcome the 'honest belief rule' by pointing to evidence that 'the employer failed to make a *reasonably informed* and considered decision before taking its adverse employment action.'" *Babb*

*v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 322 (6th Cir. 2019) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-08 (6th Cir. 1998)).

Here, Sourinho focuses his argument on whether Rich Products' non-retaliatory reasons are ultimately correct. (*See, e.g.*, Appellant Br. at 16 ("The record shows that Mr. Sourinho was truthful [with] Rich at all times.").) But the contention that Rich Products' conclusions and reasons had no basis in fact is a stretch at best given its diligent investigation. In any case, even if a trial were warranted on that question, Sourinho has failed to "put forth evidence that [Rich Products] did not 'honestly believe' in the given reason for [Sourinho's] termination." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007) (quoting *Braithwaite*, 258 F.3d at 494). Nor has he attempted to explain how Rich Products "failed to make a *reasonably informed* and considered decision." *Babb*, 942 F.3d at 322 (quoting *Smith*, 155 F.3d at 807). Thus, Sourinho's pretext argument misses the mark, and he is unable to save his TPPA claim.

IV.

For these reasons, Rich Products was entitled to summary judgment. We AFFIRM.