NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0374n.06

**No. 13-5942**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 20, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JANET EPPERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| RESOURCE HEALTHCARE OF AMERICA, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: GRIFFIN, WHITE, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

In this diversity action, plaintiff Janet Epperson filed retaliatory discharge claims under Tennessee's whistleblower statute and common law against defendant Resource Healthcare of America, Inc. claiming that defendant, her former employer, wrongfully terminated her for refusing to participate in and refusing to remain silent about defendant's alleged illegal activity. The parties filed cross-motions for summary judgment; the district court granted defendant's motion and denied plaintiff's motion. For the reasons that follow, we reverse the grant of summary judgment to defendant, affirm the denial of summary judgment to plaintiff, and remand the case for further proceedings.

I.

Defendant provides healthcare and living assistance for developmentally disabled individuals. Plaintiff began work as a staff caregiver for defendant in August 2007. Her responsibilities included, among other things, assisting developmentally disabled individuals with daily living activities, transporting disabled individuals to field trips and other appointments outside defendant's facility, and performing housekeeping duties. Plaintiff is not a nurse.

Jackie Newsom was a residential care patient who at pertinent times lived at one of defendant's facilities and shared a room and nursing care with one roommate. Newsom had severe mental disabilities, including Down Syndrome and dementia, suffered from seizures, could not speak, could not feed herself, could not walk, could not propel her wheelchair, was bladder and bowel incontinent, could not swallow, and required a PEG feeding tube and other medical interventions.

Because Newsom was enrolled in the Home and Community Based Services Waiver for the Mentally Retarded and the Developmentally Disabled, her nursing services can only be ordered by her physician, physician assistant, or nurse practitioner. And because Newsom was also enrolled in certain Department of Mental Retardation Services programs, she is required to have an "Individual Support Plan" (ISP), which contains a description of all care to be provided. Further, because Newsom lived at defendant's facility, defendant created a one-page "Staffing Plan" for Newsom—derived from her ISP—which outlines how many staff are needed to provide the required care. Thus, Newsom's care was governed by her doctor's orders, her ISP, and her Staffing Plan.

Newsom's Staffing Plan stated in relevant part:

Ms. Newsom requires 1:2 staffing including an LPN 12 hours a day to insure proper health and safety. Additional staff may be provided on a needed basis for

as little as one hour or as large as 8 or more hours. She requires 1:2 staff for all daily activities of daily living and community living as well. In the event that her roommate is away from the home, then Jackie will be 1:1 and an LPN will make up that staffing ratio. Patient shares staff with her roommate.

Her ISP further provides in pertinent part:

Jackie has a PEG tube, which was inserted for continuous feeding and for medication. Jackie's doctor has recommended 12-hour/day nursing care. . . .

Ms. Newsom is approved for 24-hour nursing. She shares a nurse with her housemate who is also approved for 24-hour nursing. However, RHA only bills for 12 hours per day of nursing per person. Request to decrease nursing to 12 hours per day. (approved)[.] . . .

All of Jackie's fluids, nutrition, and medications must be administered through Jackie's PEG tube. Only Jackie's nurse can do this.

Lisa Jackson, a LPN (and also plaintiff's mother) who works for defendant and has cared for Newsom for several years, testified that "while I was working with Jackie she always had a nurse with her." Jackson testified that Newsom was approved for 24-hour nursing care and that Newsom "shares her nurse with her roommate who is also approved for 24-hour nursing." Jackson explained that defendant bills each of them—Newsom and her roommate—for 12-hour nursing, but that in practice each had 24-hour nursing care.

In mid-December of 2011, Demetria Weaver, plaintiff's supervisor, instructed plaintiff to remove Newsom from the facility on Christmas Day and drive Newsom to her sister's home about an hour away from the facility so that Newsom could visit with her family for two hours, and then drive Newsom back to the facility. Plaintiff, having worked with Newsom after being trained on her ISP, initially agreed and assumed that a nurse would be accompanying them during their four-hour visit away from defendant's facility. However, plaintiff later learned that she was to transport Newsom alone, without a nurse.

Plaintiff called Teresa Henline, a registered nurse who was Newsom's case manager, to discuss her concerns about the assignment. Plaintiff told Henline that she was "not comfortable" transporting Newsom without a nurse. Henline, who had at some point before this incident reviewed Newsom's doctor's orders and ISP, told plaintiff that a nurse was not required because of the short duration of the visit. Plaintiff then again spoke with Weaver, repeated her concern that she was uncomfortable with transporting Newsom without a nurse, and stated that she was not going to take Newsom without a nurse.

On December 23, 2011, plaintiff met with Weaver and other defendant employees to further discuss the situation. Weaver again explained the assignment, but plaintiff still refused. Consequently, plaintiff was terminated during this meeting.

Plaintiff thereafter filed the instant diversity suit against defendant, alleging that her termination violated the Tennessee Public Protection Act (TPPA), Tenn. Code Ann. § 50-1-304, and also constituted the common law tort of retaliatory discharge. The parties filed cross-motions for summary judgment after substantial discovery. The district court granted defendant's motion and denied plaintiff's motion. Plaintiff timely appealed both the denial of her motion and the grant of defendant's motion.[1]

II.

A.

We review de novo the district court's grant of summary judgment. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the

---

[1]Ordinarily, the denial of summary judgment is considered an interlocutory order and thus not immediately appealable. *Am. & Foreign Ins. Co., Inc. v. Sequatchie Concrete Servs., Inc.*, 441 F.3d 341, 344 (6th Cir. 2006). However, in this case, because "the appeal from a denial of summary judgment is presented together with an appeal from a grant of summary judgment, we have jurisdiction to review the appropriateness of the district court's denial." *Thomas v. United States*, 166 F.3d 825, 828 (6th Cir. 1999).

evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013). Additionally, in a case involving cross-motions for summary judgment where the motion was granted to one party and denied to the other on the purely legal ground that the other party's motion was granted—such as the case at bar—we conduct de novo review of both motions. *Black v. Roadway Express*, 297 F.3d 445, 448 (6th Cir. 2002).

B.

In granting defendant's motion for summary judgment, the district court held that plaintiff failed to establish a prima facie case of retaliatory discharge under the TPPA or the common law. We disagree.

Tennessee recognizes both a statutory cause of action and a common law tort for retaliatory discharge. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 531 (Tenn. 2002). These claims arose from the "public policy that an employee should not be placed in the moral, ethical and legal dilemma of being forced to choose between reporting or participating in illegal activities and keeping his job[,]" *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 530 (Tenn. Ct. App. 2006), and represent narrow exceptions to the "long adhered to [] common law employment-at-will doctrine, which provides that an employment contract for an indefinite term is terminable at the will of either the employer or the employee for any cause or for no cause[,]" *Guy*, 79 S.W.3d at 534–35.

A prima facie case under the TPPA has four elements:

(1) the plaintiff was an employee of the defendant;

(2) the plaintiff refused to participate in or remain silent about illegal activity;

(3) the defendant employer discharged or terminated the plaintiff's employment; and

(4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011).

The first three elements of a common law retaliatory discharge are functionally identical to the elements of the statutory claim. *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 797 (M.D. Tenn. 2010). The fourth element differs in that under the common law, a plaintiff must show that her activity was a "substantial factor" in her discharge, rather than the sole reason. *Webb*, 346 S.W.3d at 437–38. Consequently, courts often analyze TPPA and common law retaliatory claims together. *Cf. Riddle v. First Tennessee Bank, Nat. Ass'n*, 497 F. App'x 588, 597–98 (6th Cir. 2012).

Regarding the second element, a plaintiff must sufficiently identify the illegal conduct or (attempted illegal conduct) that she refused to participate in or remain silent about. The TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3). And the common law similarly protects an employee from being terminated if the reason for that termination "was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision[.]" *Webb*, 346 S.W.3d at 438 (internal quotation marks omitted). Under either claim, "the 'illegal activity' or violation by the employer must implicate important public policy concerns[,]" *Williams v. Greater Chattanooga Pub. Television Corp.*, 349 S.W.3d 501, 515 (Tenn. Ct. App. 2011).

Tennessee courts have held that "the TPPA's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated." *Id.* (citing *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997)).[2] As the district court in this case recognized, if there is any doubt regarding whether a defendant's actions were illegal or whether a plaintiff's belief in the alleged illegality was reasonable, summary judgment is inappropriate. *Id.* at 515–16.

If a prima facie case is established under either theory of liability, the burden shifts to the defendant to come forward with a legitimate, non-retaliatory reason for the discharge. *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1031–32 (6th Cir. 2010). If the defendant advances a legitimate, non-retaliatory reason, the burden shifts back to the plaintiff to prove that the explanation is pretextual. *Id.*

In this case, we conclude that plaintiff has established a prima facie case of retaliatory discharge under both the TPPA and the common law. Plaintiff argues that it was reasonable for her to believe that Newsom required 24-hour nursing care and that denying Newsom that care would violate the law.[3] More specifically, plaintiff maintains that because Newsom's Staffing Plan—which was derived from her ISP—ordered 24-hour nursing care, and because defendant

---

[2]It is not entirely clear whether the "reasonable cause to believe" theory of liability is available under the common law. However, at oral argument, defendant had no objection to plaintiff's position that the theory is viable under the common law in addition to the TPPA.

[3]Defendant argues that plaintiff has waived any "reasonable cause to believe" claim because it was not included in her complaint and was instead raised for the first time in response to defendant's motion for summary judgment after discovery closed. We agree with plaintiff that a "reasonable cause to believe" claim is not a categorically distinct type of retaliatory discharge claim that must be pled and proven separate from a TPPA or common law claim but rather a type of proof that she can offer to establish the second element of her prima facie case. *See Mason*, 942 S.W.2d at 472. Accordingly, plaintiff may proceed under a "reasonable cause to believe" theory of liability.

instructed her to remove Newsom from its facility for four hours without a nurse, that order violated Newsom's Staffing Plan, which in turn violated the law.

Plaintiff has supported her prima facie case with enough evidence to withstand summary judgment. First, it is undisputed that the first and third elements are established because defendant employed plaintiff and defendant terminated plaintiff's employment during the December 23, 2011, meeting.

Second, plaintiff has established the second element by offering proof that Newsom required 24-hour nursing care and that denying Newsom that care would violate the law. Plaintiff argues that Newsom required 24 hours of nursing care based on (1) her personal observations that Newsom actually had 24 hours of nursing care; (2) Newsom's ISP, which stated that she was "approved" for 24 hours of nursing care; (3) the Staffing Plan, which the district court found could be reasonably construed as requiring 24-hour nursing care; (4) Newsom's doctor orders, which stated that Newsom "could benefit" from 24-hour nursing care; and (5) testimony of numerous defendant employees who overwhelmingly confirmed that Newsom actually received 24 hours of nursing care.

Regarding which law plaintiff reasonably believed was violated, she testified that she refused to participate in or remain silent about "an illegal act against [Newsom's] staffing plan." Asked what law, rule, or regulation was violated if plaintiff had transported Newsom without a nurse, plaintiff answered: "It would have violated one." In her brief, plaintiff explains in further detail that Newsom's legal right to 24-hour nursing care arises from her ISP, a plan-of-care document required for Medicaid funding under 42 U.S.C. § 1396r(b)(2) and Tenn. Code Ann. § 71-5-101, *et seq*. Defendant admitted that an ISP is required in order to receive federal funding and conceded at oral argument that adherence to the ISP is required under the law. Further, it is

undisputed that Newsom's Staffing Plan is the document that defendant created for non-nursing staff caregivers, like plaintiff, which sets forth the meaning of Newsom's ISP and "outlines how many staff are needed to provide care to a client." Thus, a failure to comply with Newsom's ISP or Staffing Plan would constitute a violation of law.

Third, plaintiff has established the fourth element because her proofs allow a reasonable jury to conclude that the sole or a substantial reason for her termination was her refusal to participate in or remain silent about the above described illegal activity. It is apparent that defendant terminated plaintiff's employment during the December 23, 2011, meeting only after she repeatedly refused to transport Newsom without a nurse.

Against plaintiff's evidence, defendant argues that she could not have held a reasonable belief that Newsom required 24 hours of nursing care by criticizing plaintiff's interpretations of Newsom's doctor's orders, ISP, and Staffing Plan, and attempting to establish inconsistencies between plaintiff's deposition testimony and the text of Newsom's plan-of-care documents. Defendant posits an alternative interpretation of those documents: Newsom only required 12 hours of nursing care; and, therefore, a nurse did not have to accompany plaintiff and Newsom during their short trip. The district court agreed, holding that

> any belief [plaintiff] possessed that the staffing plan created a requirement that Newsom be accompanied by a nurse when out of her home was not a reasonable one. [S]he could not have reasonably relied on the ISP or the physician's orders in believing Newsom's removal from the home required a nurse because neither said so. Nor could she have reasonably relied on the staffing plan to the extent it was inconsistent with the ISP and doctor's orders because she knew that, in the event the staffing plan was inconsistent therewith, the ISP and physician's orders governed.

The court's acceptance of defendant's interpretation of the record is reversible error because it did not view the facts in the light most favorable to plaintiff. The district court erroneously disregarded plaintiff's evidence and failed to draw all justifiable inferences in her

favor when determining whether plaintiff could have reasonably believed that the ISP or Staffing Plan required that a nurse be present when non-nursing staff like plaintiff were to be alone with Newsom while away from defendant's facility. *See Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("We consider the evidence presented in the light most favorable to [the nonmoving party] and we draw all justifiable inferences in his favor."). In our view, the record contains genuine issues of material fact on whether Newsom required around-the-clock nursing care and whether plaintiff reasonably believed that denying Newsom a nurse for four hours on Christmas Day would have violated the law. Given the existence of these genuine disputes, the evidence is not so one-sided that defendant should prevail as a matter of law. *Id.* Accordingly, summary judgment in defendant's favor was improper.[4]

C.

As for plaintiff's motion for summary judgment, the record does not compel us to hold that a reasonable jury could find *only* in plaintiff's favor. *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." (internal quotation marks, citation, and emphasis omitted)). Although plaintiff persuasively marshals the facts to show that it was reasonable for her to conclude that Newsom required 24-hour nursing care and that denial of that care would have violated the law, her evidence is not "so powerful that no reasonable jury would be free to disbelieve it." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (internal quotation marks and citation omitted). Indeed, a rational

---

[4]Because the district court did not reach the second or third steps of the burden-shifting analysis, and because the parties did not squarely argue the points in their appellate briefs, we decline to address those issues in the first instance and leave it to the district court to address the matter on remand.

factfinder could agree with defendant's alternative interpretation of the record that Newsom had no legal right to 24 hours of nursing per day under her ISP or Staffing Plan, no law would have been violated if plaintiff had transported Newsom without a nurse for four hours, and plaintiff's alleged belief otherwise was not reasonable. As the Supreme Court has observed, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). Such is the case here because Newsom's ISP and Staffing Plan are open to several interpretations regarding whether she required 24-hour nursing care. Accordingly, plaintiff is not entitled to summary judgment.

### III.

For these reasons, we reverse the grant of summary judgment to defendant, affirm the denial of summary judgment to plaintiff, and remand the case to the district court for further proceedings consistent with this opinion.