NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0563n.06

**No. 14-5714**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SERFIN AMOS,

  Plaintiff-Appellant,

v.

MCNAIRY COUNTY; MCNAIRY COUNTY
SHERIFF'S DEPARTMENT,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 10, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE

BEFORE: MOORE, GIBBONS, and GRIFFIN; Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff Serfin Amos appeals from the district court's grant of summary judgment in favor of defendants McNairy County, Tennessee and McNairy County Sheriff's Department on his claims alleging violations of Title VII for discrimination and retaliation, 42 U.S.C. §§ 2000e-2(a), 2000e-3a; the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*; and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304. For the reasons set forth below, we affirm the district court's grant of summary judgment to McNairy County on Amos's discrimination and Tennessee Public Protection Act claims but vacate the district court's *sua sponte* grant of summary judgment as to Amos's retaliation claim and remand for further proceedings consistent with this opinion.

**I.**

In 2008, Amos, a black male, began working as a correctional officer for the McNairy County Sheriff's Department. Prior to hiring Amos, the Sheriff's Department ran a background

check that revealed trespassing and other misdemeanor charges against him in Phoenix, Arizona. The Sheriff's Department hired him in spite of this fact.

In early 2010, Amos was assigned by Rick Roten—the Sheriff of McNairy County at that time—to supervise the litter crew. On April 14, 2010, Amos took a day off for a doctor's appointment. As a result, Brian Huggins, a white corrections officer, filled in for Amos during his absence. The very next day, Amos was issued a Disciplinary Action Notice in which he was (1) removed from overseeing the litter crew, (2) assigned to a position in the jail, and (3) placed on sixty days' probation. According to Roten, he had heard from the inmates on the litter crew that Amos only required the crew to pick up trash a couple of hours per day and would sleep or fish while working. Huggins replaced Amos as supervisor of the litter crew.

In his new position in the jail, Amos was required to work Friday, Saturday, and Sunday of every weekend. On May 27, 2010, Amos filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC") due to his reassignment. The EEOC notified McNairy County of Amos's charge on June 9, 2010. McNairy County and Roten responded to the EEOC, explaining the reasons behind Amos's reassignment.

In September of 2010, Guy Buck was elected Sheriff, replacing Roten. According to Buck, in late 2010 and early 2011, he began to review employee personnel files to ensure that the files contained all of the critical documents required by the state. The employees whose files were incomplete were informed and were given a period of time to provide the appropriate paperwork. Per the Sheriff's Department logbook, as of April 28, 2011, the Department still needed a diploma and DD214 (military discharge) paperwork from Amos.

Due to Amos's EEOC charge, on April 26, 2011, the EEOC issued a letter to McNairy County requesting an onsite investigation concerning Amos's reassignment. On May 19, 2011,

the EEOC investigation took place. The following day, on May 20, 2011, Buck performed a background search on Amos using TLO.com, an investigative tool.[1] During this search, Buck uncovered a thirteen-year old warrant issued from Phoenix, Arizona. That day, Buck sent a fax to the Municipal Court in Phoenix, Arizona requesting a copy of the warrant. Within hours, the jail supervisor issued two letters to Amos. The first letter concerned Amos's military discharge paperwork and informed him that he had seven business days to provide the appropriate military documents. The second letter informed Amos that he was being placed on administrative leave pending a notification of the official disposition of the Phoenix warrant. No other employees received such letters.

After receiving the appropriate DD214 paperwork, Amos was fired seventeen days later for his failure to "meet the pre-employment requirement[s]" because of his criminal history and military discharge. (DE 125-1, Separation Notice, Page ID # 2556.) Specifically, pursuant to Tennessee law, a corrections officer must not "have been released or discharged under any other than honorable discharge from any of the armed forces of the United States." Tenn. Code Ann. § 41-4-144(a)(5). Prior to his employment as a corrections officer, Amos was a member of the armed forces where he was discharged "under honorable conditions." (DE 131-7, Discharge, Page ID # 1987.) Buck believed that such a discharge was distinct from the honorable discharge required by the statute and thus concluded that Amos's employment violated Tennessee law.[2]

---

[1] McNairy County claims that it conducted a background check on every employee, however, the magistrate judge found McNairy County accountable for spoliation of the evidence concerning the additional background checks and permitted a negative inference to be drawn at the upcoming trial. Because of the posture of this case, the facts must be viewed in the light most favorable to Amos. Thus, this court will assume McNairy County only performed a background check on Amos.

[2] Inexplicably, however, Buck testified in his deposition that Amos was "not discharged from [his] employment because of the status of his discharge, [but] was discharged from [his] employment because he refused to present the [military discharge paperwork] . . . and the outstanding warrant." (DE 126-2, Buck Dep., Page ID # 2671.)

Amos's termination triggered the filing of this lawsuit in the United States District for the Western District of Tennessee against McNairy County and the McNairy County Sheriff's Department alleging violations of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq*.; and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304. On June 29, 2012 the district court dismissed Amos's claims against the Sheriff's Department. On January 28, 2014, the district court granted partial summary judgment to the defendants on all of Amos's claims except for his Title VII retaliation claim.

Following McNairy County's submission of various motions *in limine*, the district court held a telephonic conference with the parties on April 2, 2014. During the conference—five days before Amos's retaliation claim was scheduled for trial—the judge expressed his desire to revisit the military discharge issue and he gave both parties the opportunity to submit additional briefing. On May 16, 2014, the district court granted summary judgment *sua sponte* on the retaliation claim. In response, Amos filed a motion to set aside the district court's order pursuant to Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure or, in the alternative, for reconsideration. The district court denied the motion.

On appeal, Amos contends that the district court erred in (1) granting the defendants summary judgment on his discrimination claim; (2) granting the defendants summary judgment on Amos's Tennessee Public Protection Act ("TPPA") claim; (3) granting summary judgment *sua sponte* on his retaliation claim; and (4) denying Amos's Rule 60 motion.

## II.

A district court's grant of summary judgment is reviewed *de novo*. *Back v. Nestle USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012). Summary judgment is proper where there are no

4

genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The court must view facts in the record, and reasonable inferences that can

be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When reviewing a grant of

summary judgment, this court does not weigh evidence, assess credibility of witnesses, or

determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249,

253 (1986).

## A. Title VII Discrimination

Amos contends that the district court erred in granting summary judgment to McNairy

County on his discrimination claim. Amos alleges three instances of discrimination: 1) his

transfer from supervising the litter crew to a weekends-only position; 2) wrongful probation; and

3) wage discrimination.

To establish a *prima facie* case of employment discrimination, Amos must show that: (1)

he is a member of a protected class; (2) he was subjected to an adverse employment action; (3)

he was qualified for the position; and (4) he was replaced by someone outside the protected class

or was treated differently than similarly-situated white employees. *Deleon v. Kalamazoo Cnty.*

*Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) *cert. denied*, 135 S. Ct. 783 (2015). If Amos

establishes a *prima facie* case for discrimination, McNairy County must offer some legitimate,

nondiscriminatory explanation for its employment decision. *Davis v. Cintas Corp.*, 717 F.3d

476, 491 (6th Cir. 2013). If it produces such an explanation, Amos must point out "evidence

from which a jury could reasonably reject [McNairy County's] explanation." *Chen v. Dow*

*Chem. Co.,* 580 F.3d 394, 400 (6th Cir. 2009). An adverse employment action is a "'materially

adverse change in the terms and conditions of a plaintiff's employment.'" *Deleon*, 739 F.3d at

918 (quoting *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 795 (6th Cir. 2004) (*en banc*)). "A mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Id.* (internal quotation marks omitted). However, "reassignments and position transfers can qualify as adverse employment actions, particularly where they are accompanied by salary or *work hour changes.*" *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (emphasis added) (internal quotation marks omitted).

### 1. Amos's Reassignment and Probation

Amos avers that both his reassignment from the litter crew to the jail and his subsequent probation were based on racial animus. According to the disciplinary report, Amos was placed on sixty days' probation as a result of his job performance on the litter crew. The district court found that Amos had failed to establish the *prima facie* case for discrimination because neither the transfer nor the probation[3] constituted adverse employment actions. In this case, it is not necessary for us to make a firm determination of whether these actions amount to adverse employment actions because, even assuming Amos can meet the *prima facie* case of discrimination, McNairy County has offered legitimate, nondiscriminatory reasons for its actions.

The record shows that Roten received reports that Amos only required the trustees to pick up trash for a couple of hours and was sleeping and fishing while on the job. These claims are substantiated by the fact that on the day Huggins filled in for Amos, his crew picked up twice as many pounds of litter as Amos had on any given day in March and April of 2010. At the very

---

[3] While this Circuit has not explicitly addressed whether probation is an adverse employment action in the context of discrimination, this court has held that placement on a performance improvement plan and non-satisfactory work reviews, absent some loss in salary, title, or benefits, did not rise to the level of a materially adverse employment action. *Choulagh v. Holder*, 528 F. App'x 432, 438 (6th Cir. 2013).

least, this evidence suggests that Amos was not particularly effective in his position, even if he was not sleeping or fishing on the job.

Amos attempts to refute this legitimate motivation by arguing that McNairy County's motivation has no basis in fact. Amos claims the litter comparisons were flawed because they neglected to account for the number of trustees working on the litter crew or the types of litter they picked up. However, Amos has failed to refute the fact that the litter crew picked up a great deal more weight on the day Huggins was in charge. It was the next day that Amos was reassigned and placed on probation. Also, Amos has failed to point to any evidence from which a jury could reasonably reject Roten's explanation that he received reports of Amos shirking his duties. The evidence, even when viewed in a light most favorable to Amos, would not lead a reasonable jury to conclude that McNairy County's proffered reasons for Amos's transfer or subsequent probation were pretextual.

### 2. Wage Discrimination

Amos contends that McNairy County engaged in wage discrimination because it paid his similarly situated white co-workers more than it paid him. Specifically, Amos points to the report of his expert, Dr. Parker Cashdollar. According to the report, out of the white-male employees hired around the same time as Amos, one earned the same salary as Amos, one earned $16,002 more than Amos over a three-year period, and one earned $1,183 more than Amos over a three-year period. The district court found that Amos failed to demonstrate that he was similarly situated to the two white employees who earned more because he pointed to no evidence "beyond their hire dates and the amount of money they made—not their education, experience, duties, skills or the hours they worked." (DE 148, Order, Page ID #3315.) Amos argues that this analysis is flawed because Roten testified that differences in pay were attributed

to seniority and cost of living raises.  Thus, in Amos's view, these are the only factors the court should have considered.  But, although Roten said that pay increases were the result of seniority and cost-of-living raises "most of the time," Roten did not testify that these were the *only* types of raises doled out.

Moreover, even assuming that seniority was the sole determinant of salary, the fact that Amos earned less than various white employees at McNairy County, "standing alone, is not sufficient to permit an inference of discrimination." *Conti v. Universal Enters.*, 50 F. App'x 690, 699 (6th Cir. 2002) (*per curiam*).  "As this court has explained, '[f]or statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.'" *Blackstone v. Daughtry*, 19 F.3d 1432 (6th Cir. 1994) (unpublished table decision) (alteration in original) (quoting *Simpson v. Midland-Ross Corp.,* 823 F.2d 937, 944 (6th Cir. 1987)) (internal quotation marks omitted).  The fact that two white male employees hired at the same time earned more than Amos does not present sufficient statistical disparity to establish a *prima facie* case of discrimination.  Moreover, Amos fails to present additional evidence regarding wage discrepancies between employees in the protected class and those outside the protected class from which a reasonable jury could conclude that defendants engaged in wage discrimination in violation of Title VII.  Consequently, the district court correctly concluded that defendants were entitled to summary judgment on Amos's Title VII race-based wage discrimination claim.

### B. Tennessee Public Protection Act

Amos also claims that the district court erred in granting summary judgment to defendants on his TPPA claim because he has successfully established a *prima facie* case.  In May of 2011, while on duty as a jailer, Amos witnessed an officer from another jurisdiction

abusing a prisoner during the booking process. An investigation ensued, and Amos and others

offered testimony to state and federal authorities concerning the incident.

The district court described the event:

> [Amos] maintains that, on April 29, 2011, prisoner James McKinney was beaten by a Selmer, Tennessee police officer as he was being placed in the McNairy County Jail. Amos related in his deposition that he saw the Selmer officer grab McKinney and push his head forward while he was being booked. (D.E. 126 at 44.) The officer had the duty to turn McKinney over to Amos for booking into the McNairy County Jail, but Amos did not initially accept custody of the prisoner because he did not find him to be in proper condition for booking, as he was complaining of shoulder and head pain. (Id. at 44-49.) He discussed the matter with Steve Ellsworth, a senior deputy, who advised him to keep an eye on the prisoner and call someone if his condition worsened. (Id.) Amos later booked McKinney into the jail and called a superior to advise that he had one who needed to go to the hospital. (Id. at 48.) Plaintiff's partner, Janice Woods, made a notation of the request in the jail's logbook. (Id.) McKinney was transported to the hospital. Amos was interviewed in early May 2011 by state and/or federal investigators about the incident at Buck's request. (Id. at 50-51; D.E. 141 at 7.)

(DE 148, Order, Page ID # 3329–30.)

The TPPA provides that "[n]o employee shall be discharged or terminated solely for

refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code

Ann. § 50-1-304(b) (2012). To establish a claim for retaliatory discharge under the TPPA, a

plaintiff must prove: (1) his status as an employee of the defendant; (2) his refusal to participate

in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal

relationship between the refusal to participate in, or remain silent about, illegal activities and his

termination. *Epperson v. Res. Healthcare of Am., Inc.*, 566 F. App'x 433, 436 (6th Cir. 2014)

(citing *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011)).

As the Tennessee Supreme Court has explained, the plaintiff must "demonstrate that his

whistleblowing behavior was the *sole* reason for his termination." *Guy v. Mut. of Omaha Ins.

Co.*, 79 S.W.3d 528, 537 (Tenn. 2002). Neither party disputes that the first and third elements

have been shown. Thus, this analysis will focus on Amos's refusal to remain silent, and whether this refusal was the exclusive reason for his termination. Amos bears the burden of establishing each element of a cause of action for retaliatory discharge. *Coffey v. City of Oak Ridge*, No. E2013–02200–COA–R3–CV, 2014 WL 4536364, at *3 (Tenn. Ct. App. Sept. 12, 2014).

Pursuant to the TPPA, "illegal activities" are defined as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3). The district court found that Amos failed to point to any code or regulatory violation arising out of the McKinney incident. This is true. When asked to explain the illegal activity surrounding the incident, Amos testified that the "only wrongdoing that I saw was the fact that Sergeant Elsworth didn't respect my request to take [the prisoner] to the emergency room at that time." [4] (DE 126, Amos Dep., Page ID # 2628).

Moreover, even assuming that a delay in taking a prisoner to the emergency room constitutes an illegal activity, Amos has completely neglected to point to anything in the record that demonstrates that he told investigators that McNairy County delayed taking McKinney to the hospital. Although he cites to the record, these cites do not support his contentions. This defect is repeated in his argument attempting to prove a causal connection. Such "lackadaisical" citations preclude meaningful review of the record, especially where that record is voluminous. *Sagan v. Sumner Cnty. Bd. of Educ.*, 501 F. App'x 537, 539 (6th Cir. 2012) (*per curiam*). If a party fails to properly support an assertion of fact as required by Rule 56(c), the district court is

---

[4] Amos also claims that "he reported the illegal activities of County officials working within the County's jail." We assume that he is referring to the fact that the employees were forced to take "comp time" for overtime rather than being paid. However, he admittedly never complained to anyone about this, and thus is unable to fulfill the second element of the *prima facie* case for this alleged illegal activity.

permitted to deem the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e). "The district court has no independent obligation to search the record for evidence that would enable a party's claims to survive summary judgment, and neither do we." *Sagan*, 501 F. App'x at 540. In light of this, the district court properly concluded that Amos failed to establish a *prima facie* case for his TPPA claim.

### C. *Sua Sponte* Grant of Summary Judgment on Retaliation Claim

The substance of the district court's decision to grant summary judgment *sua sponte* is reviewed *de novo* under the normal standards for summary judgment. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). On the other hand, the procedural decision to grant summary judgment *sua sponte* is reviewed for abuse of discretion. *Emp'rs. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir. 1995). Because Amos has presented sufficient evidence to demonstrate a genuine issue of material fact on his retaliation claim, the district court's order shall be reversed on that basis. As a result, we need not address whether the district court abused its discretion in granting summary judgment *sua sponte*.

Amos contends that the district court erred in granting summary judgment to the defendants on his retaliation claim. In order to establish a *prima facie* case of unlawful retaliation, Amos must show: (1) that he engaged in a Title VII-protected activity; (2) that his employer knew of that activity; (3) that Amos experienced an adverse employment action; and (4) that a causal connection exists between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 363 (6th Cir. 2001). Neither party disputes that Amos has satisfied the first three elements. Therefore, the only issue is whether Amos has established a causal connection between his EEOC filing and his termination.

Defendants unavailingly argue that Amos cannot establish that the filing of his EEOC charge was the but-for cause of his termination as required by *Univ. of Texas Sw. Med. Ctr v. Nassar.*[5] 133 S. Ct. 2517, 2534 (2013). Even after *Nassar*, however, this court has explicitly held that temporal proximity alone can establish causation. *Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 505 (6th Cir. 2014); *Herrera v. Churchill McGee, LLC*, 545 F. App'x 499, 501 (6th Cir. 2013) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity alone may satisfy the causal prong of a plaintiff's prima facie retaliation case." (internal quotation marks omitted)). Moreover, the temporal proximity need not be measured from the EEOC charge alone. Rather, Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, *assisted, or participated in any manner in an investigation,* proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (emphasis added). Therefore, Title VII's language supports measuring the time period from the date of an EEOC investigation instigated by a plaintiff's EEOC charge. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 581–82 (6th Cir. 2000).[6]

McNairy County suspended Amos one day after the EEOC conducted its onsite investigation due to Amos's discrimination charge. Seventeen days later, Amos was terminated. In *Herrera*, this court found that the plaintiff's termination one month after he complained to his employer of race discrimination was close enough in time to establish causal connection. 545 F.

---

[5] McNairy County also urges the court to find no causal connection by taking into account Buck's alleged nonretaliatory reasons for terminating Amos. A court, however, may not do so when analyzing the *prima facie* case. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 574–75 (6th Cir. 2003) (*en banc*) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." (internal quotation marks omitted)).

[6] Indeed, in its original order denying summary judgment to McNairy County on Amos's retaliation claim, the district court cogently found a causal connection: "[v]iewing the evidence in the light most favorable to [Amos], the Court finds that his firing seventeen days after the EEOC onsite investigation arising from his discrimination charge satisfies the causation prong of the prima facie case." (DE 148, Summ. J. Order, Page ID # 3326.)

App'x at 502. It follows that Amos's termination seventeen days after the EEOC investigation fulfills the causal connection element.

Because Amos has established a *prima facie* Title VII retaliation case, the burden of production shifts to McNairy County to articulate legitimate non-discriminatory reasons for its actions. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 492 (6th Cir. 2010). McNairy County has seemingly done so; it claims that Amos was terminated because his continued employment violated Tennessee law due to his criminal history and his "other than honorable" military discharge. The onus therefore shifts back to Amos to rebut this justification by demonstrating that the given reasons were pretext. He may do so by showing the offered reasons for his termination: (1) had no basis in fact; (2) did not actually motivate McNairy County's conduct; or (3) were insufficient to explain this conduct. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009). "Unlike its role in establishing a prima facie case, the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (internal quotation marks omitted). Suspicious timing, however, "'is a strong indicator of pretext when accompanied by some other, independent evidence.'" *Id.* (quoting *Bell v. Prefix, Inc.,* 321 F. App'x 423, 431 (6th Cir. 2009)).

Amos contends that McNairy County's reasons for terminating Amos had no basis in fact.[7] Accordingly, Amos must show that the "proffered bases for his discharge . . . are factually false." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007)

---

[7] Amos also argues that he presented sufficient evidence that the proffered reasons for terminating him were insufficient to motivate the discharge. To establish the insufficiency of McNairy County's proffered reasons, Amos must show that "other employees, particularly employees not in the protected class, were not [terminated] even though they engaged in substantially identical conduct to that which the employer contends motivated its [termination of Amos]." *Rhoades v. Standard Parking Corp*., 559 F. App'x 500, 505 (6th Cir. 2014) (internal quotation marks omitted). Amos is unable to do so. He neglects to point to any other employees, let alone those outside of the protected class, who were not terminated despite engaging in substantially similar conduct.

(internal quotation marks omitted). In other words, Amos must establish a genuine issue of fact surrounding his pre-employment requirements that would permit a jury to conclude that McNairy County fabricated its reasons for firing Amos. The ultimate inquiry is "did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (internal quotation marks omitted). To analyze this issue we must look to Tennessee law.

Tennessee law mandates that "any person employed as a . . . corrections officer . . . shall . . . [n]ot have been convicted of, or pleaded guilty to . . . any violation of any federal or state laws . . . relating to force, violence, theft, dishonesty, gambling, liquor, [or] controlled substances . . .; [nor shall he] have been released or discharged under any other than honorable discharge from any of the armed forces of the United States." Tenn. Code Ann. § 41-4-144(a)(4)-(5). Consequently, there are specific restrictions on who can be employed in the jail in McNairy County, which are enforced by the potential imposition of criminal sanctions on those who hire unqualified applicants. *Id.* § 41-4-144(b)(2) (class A misdemeanor).

According to Buck's testimony, Amos was fired because of his less than honorable discharge and a thirteen-year-old warrant from Phoenix. Although Amos was discharged under honorable conditions, according to Buck's interpretation of the statute, this was not the same as an honorable discharge.

In its first order denying summary judgment to McNairy County on the retaliation claim, the district court correctly found that Amos produced sufficient evidence to establish a genuine issue of material fact as to whether the County fired Amos for an impermissible reason.[8] The statute does not mandate that a corrections officer cannot have a warrant for offenses not involving those explicitly named in the statute. Here, the Arizona incident did not necessarily

---

[8] In its subsequent, *sua sponte* order, the district court refused to reconsider Amos's warrant as a legitimate reason for Amos's discharge.

implicate "force, violence, theft, dishonesty, gambling, liquor [or] controlled substances." Indeed, the documents sent to Buck by the Phoenix Municipal Court do not contain any specific allegation of force or violence.

As to Amos's military discharge, although the district court originally held otherwise, in the *sua sponte* order granting summary judgment the court noted that, at the pretrial conference, "the Defendant offered evidence for the first time, as well as more extensive argument, in support of the view that a discharge under honorable conditions is not an honorable discharge." (DE 174, Summ. J. Order, Page ID # 3537.) The district court, however, decided against wading into the "quagmire" of determining whether a discharge under honorable conditions is, or is not, an honorable discharge. (*Id.* at 3540.)

Whether Amos's military discharge satisfies § 41-4-144(a)(5)'s requirement that a jailer shall "[n]ot have been released or discharged under any other than honorable discharge from any of the armed forces of the United States" is indeed a difficult question to resolve. Tenn. Code Ann. § 41-4-144(a)(5). Like the district court, we do not think it necessary to address this thorny issue, but for a different reason. Regardless of whether the statute bars Amos's employment, we think that Amos has presented sufficient evidence to suggest that his military discharge did not actually motivate McNairy County to fire him.[9]

---

[9]We recognize that Amos did not clearly articulate this particular theory of proving pretext in his briefs. However, as we have stated in prior opinions that separating the methods of proving pretext into three categories is itself somewhat artificial, we think that we can fairly apply this theory here. *See, e.g.*, *Tingle*, 692 F.3d at 530 ("We have acknowledged the criticism that has been leveled at the practice of segmenting the pretext inquiry into those three categories. But we have never regarded those categories as anything more than a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not? As we have stated, at bottom the question is always whether the employer made up its stated reason to conceal intentional [retaliation].") (internal quotation marks and citations omitted). Moreover, the evidence Amos presented to suggest that McNairy County did not have an "honest belief" that § 41-4-144(a)(5) barred Amos's employment is equally probative of whether Amos's military discharge actually motivated McNairy County to fire him.

15

Ample evidence suggests that McNairy County had decided to fire Amos because of the on-site EEOC investigation, and began to intensely scrutinize him (and him only) to find a legitimate reason that the County could then cite to justify its decision post-hoc. First, the record suggests that the day after the EEOC's visit, the Sheriff conducted an extensive background check on Amos, and Amos alone. Although Buck claims that he did such a background check on every employee, the record belies this. In fact, a magistrate judge found that McNairy County intentionally destroyed unfavorable evidence concerning these other alleged background searches through TLO.com. Second, Buck faxed the Phoenix Municipal Court to inquire about Amos's warrant suspiciously the day after the EEOC investigation.

We have held previously that this kind of behavior can create a genuine dispute of material fact on the issue of pretext. *See, e.g.*, *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) ("We have held that when an employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee, the employer's actions constitute the very definition of pretext. Hamilton has sufficiently alleged that this is exactly what happened to him; GE increased its surveillance of his work after he filed an age-discrimination complaint with the EEOC and then GE waited for an opportunity to fire him.") (internal quotation marks and citation omitted); *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 590 (6th Cir. 2009) ("We explained [in *Hamilton v. General Electric Co.*] that because plaintiff alleged that his employer heightened its scrutiny and supervision of him following his filing of an age-discrimination charge with the EEOC to find a seemingly legitimate reason to fire him, he created a question of material fact as to pretext. . . . As in *Hamilton*, Upshaw has raised a genuine issue of material fact as to whether Ford's proffered reasons for her termination were contrived following her many EEOC charges and the filing of

this lawsuit.") (internal quotation marks and citations omitted); *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007) (holding that it "is the very definition of pretext" if "[t]he employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee"); *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 895 (6th Cir. 2008) ("Beyond temporal proximity, other indicia of retaliatory conduct would include . . . evidence that the plaintiff was subjected to closer disciplinary scrutiny after exercising Title VII rights.").

Assuming without deciding that the "honest belief" doctrine is still relevant to this theory of pretext, this same evidence undercuts McNairy County's argument that it had an "honest belief" that the statute barred Amos's employment.[10] *See Shazor v. Prof'l Transit Mgmt., Ltd*, 744 F.3d 948, 960 (6th Cir. 2014). Under this doctrine, an employer's proffered reason is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the adverse decision was made. *Id.* However, an employer is not automatically shielded from liability merely by invoking the honest belief rule. *Seeger*, 681 F.3d at 286. "[W]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action . . . then any reliance placed by the employer in such a process cannot be said to be honestly held." *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 708 (6th Cir. 2006) (internal quotation marks omitted).

---

[10]We do not reach the issue of whether the "honest belief" rule is applicable because that defense responds more logically to the "had no basis in fact" theory of pretext. *See, e.g.*, *Denhof v. City of Grand Rapids*, 494 F.3d 534, 542 (6th Cir. 2007) ('Where the employer took the adverse employment action in the honest belief of information provided by a third party, *the plaintiff cannot win by showing that the information was mistaken or incorrect*.") (emphasis added). Moreover, as we discuss, evidence that demonstrates a stated reason did not actually motivate an employer to take an adverse employment action against the employee usually will also suggest that the employer did not have an honest belief in the asserted reason. Thus, applying the honest belief rule will likely be redundant in most cases. For the sake of comprehensiveness and because the district court rested its decision on the "honest belief" rule, we still consider its applicability.

The district court granted McNairy County summary judgment on the basis of the honest belief rule. The court found that, regardless of whether § 41-4-144(a)(5) barred Amos's employment, "[t]he evidence reflects that Buck interpreted the statute as requiring a jail employee to have been honorably discharged, period. He further claimed in his deposition that he sought out the local Veterans Administration representative, who confirmed his interpretation of the statute."[11] (DE 174, Summ. J. Order, Page ID #3540.) Buck did testify that he spoke with Judy Bivens, a Veterans Administration representative, who allegedly affirmed his interpretation that a discharge under honorable conditions was not the same as honorable discharge.

However, we find that the evidence that suggests McNairy County was not actually motivated by potential problems with Amos's military discharge to fire him—including McNairy County's spoliation of evidence, and the suspicious timing of Amos's background check, suspension, and subsequent firing—also undercuts that its asserted belief that § 41-4-144(a)(5) barred his employment was honestly held. This evidence also provides a basis for questioning the veracity of Buck's testimony about consulting Bivens.[12] In sum, when viewing the evidence in the light most favorable to Amos, he has produced sufficient evidence "from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally

---

[11]It is unclear what prompted the district court to apply this doctrine. It was not addressed in the summary judgment motion. The parties both referred to it briefly in their proposed jury instructions. A transcript of the pretrial conference on April 1, 2014 is not part of the record. The honest belief rule was not mentioned in the phone conference on April 2, 2014. After the conference, both McNairy County and Amos submitted supplemental briefs briefly alluding to the issue, among other issues. Perhaps something was said on April 1 that raised the possibility of the honest belief doctrine as a possible basis for summary judgment.

[12]Following the *sua sponte* order, Amos presented an affidavit from Bivens. (DE 178-1, Bivens Aff., Page ID # 3570–71.) In her sworn testimony, Bivens stated that, in her opinion, "a general discharge under honorable conditions is not considered an other than honorable discharge" and that she would not give anyone an opinion that deviates from that belief. (*Id.* at 3570.) In other words, she would not have told anyone, including Buck, that Amos's discharge under honorable conditions was distinct from an honorable discharge as required to be a jailer by the Tennessee statute. While this testimony is obviously highly relevant to the credibility of Buck's testimony and doubtless will be of some importance at trial, its addition to the record is not necessary to reverse the grant of summary judgment on the retaliation claim.

discriminated against [the plaintiff]." *Seeger*, 681 F.3d at 285 (internal quotation marks and alterations omitted).

### D. Rule 60(b) Motion

Amos also appeals the denial of his motion to set aside the district court's order granting summary judgment pursuant to Federal Rule of Civil Procedure 60(b). Because the grant of summary judgment should be reversed, the appeal of the denial of the Rule 60(b) motion is moot.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of defendants on Amos's discrimination and Tennessee Public Protection Act claims, but vacate the district court's *sua sponte* grant of summary judgment as to Amos's retaliation claim and remand for further proceedings.