KEITH, J., delivered the opinion of the court, in which BLACK, D.J., joined. SUTTON, J. (pp. 921-23), delivered a separate dissenting opinion.
OPINION
DAMON J. KEITH, Circuit Judge.
Robert Deleon (“Deleon”) appeals the dismissal of certain of his claims from the *916 district court’s grant of summary judgment in Defendants’ favor. The district court granted Defendants’ motion on the basis that Deleon did not suffer an “adverse employment action.” Deleon was laterally transferred from one department to another, which he alleges constituted an action giving rise to sustainable claims of discrimination. On appeal, the principal issues before this Court are: (1) whether the conditions were sufficiently intolerable to maintain actionable discrimination claims; and (2) whether the fact that Deleon applied for and interviewed for the position to which he was eventually transferred disqualifies him from showing that the employment action was truly “adverse.” For the reasons that follow, we answer in Deleon’s favor on both issues. Accordingly, we REVERSE the grant of summary judgment and REMAND for proceedings consistent with this opinion.
I. BACKGROUND
Deleon, a fifty-three year old Hispanic male of Mexican descent, was employed by the Kalamazoo County Road Commission (“the Commission”) for twenty eight years. Beginning in 1995, Deleon served as an “Area Superintendent” for the Commission. In that capacity, Deleon supervised road maintenance activities, road crews, and oversaw repairs. Deleon generally received positive reviews throughout his time in this position. Deleon alleges a pervasive atmosphere of racial insensitivity and derogatory comments throughout the course of his employment.
While serving as Area Superintendent, Deleon was supervised by Defendants Travis Bartholomew (“Bartholomew”) and Joanna Johnson (“Johnson”). In 2008, a vacancy arose for the position of “Equipment and Facilities Superintendent.” The job description described the working conditions as “primarily in office [] and in garage where there is exposure to loud noises and diesel fumes.” R. 55-4, Ex. 5. Deleon applied for this position on November 13, 2008. Had he been offered the position, Deleon attested that he would have demanded a $10,000 salary increase. He also viewed the position as possessing better potential for career advancement.
After an interview, Deleon was informed that he did not receive the position. He admits that his computer skills, which were a substantive qualification for the position, were insufficient. Consequently, the commission hired another candidate who left the position shortly thereafter. The Commission then offered the position to an external candidate; this candidate eventually declined. In 2009, Deleon was involuntarily transferred to the position.[1]
According to the Commission, this was part of a larger “reorganization.” R. 55-3, Ex. 4. Bartholomew admitted that he and Johnson decided to transfer Deleon. Deleon voiced numerous objections to the hazards posed by the new position. Deleon testified that, in applying for the position, he demanded a raise because of the “hazard posed by diesel fumes and poor ventilation in the equipment and facilities area.” Deleon did not receive his requested raise. Another employee corroborated the description of the conditions: “It’s a stinky environment. It’s like sticking your head in an exhaust pipe. Have you ever sat in traffic behind a city bus? That’s *917 what it was like in the maintenance facility ... diesel fumes all the time.” R. 64, Ex. 8, p. 31. Deleon stated that it was “an office and enclosed garage facility with running trucks and equipment that resulted in constant exposure to diesel fumes.” R. 64, Ex. 1, pp. 230-231. According to this employee, this was the only Area Superintendent position subject to these conditions. Deleon asserts that he developed bronchitis — as well as a cough and sinus headaches due to the diesel fumes — and would blow black soot from his nostrils as a result.
Thereafter, Deleon’s first evaluation indicated that his performance was “acceptable in most critical areas but [was] not sufficiently above minimum satisfactory level in all areas.” R. 55-5, Ex. 8. Bartholomew thanked Deleon for his hard work, but identified technology as an area in which he could improve. Deleon, who was unhappy in his new position, inquired as to why he “had been involuntarily moved from a position where he was performing well to one that was more hazardous.” R.64 Ex. 1, p. 61. Bartholomew stated that Deleon had no choice but to accept the transfer. R. 64-1 at 110-11.. Deleon asserts that the transfer was a deliberate attempt to set him up to fail.
Bartholomew asked Deleon to write a memorandum about the redesign of a truck. However, Deleon disagreed in principle with the strategy, and was summoned into Bartholomew’s office. Deleon testified as to having a fractious meeting with Bartholomew. Four days after the meeting, Deleon was hospitalized for five days. He attributes the hospitalization to a work-induced, stress-related mental breakdown, for which he took eight months’ leave under the FMLA. In August 2011, Deleon’s psychiatrist cleared him to return to work, but, at that point, the Commission had terminated him. According to the Commission, Deleon had exhausted all of his available leave.
II. STANDARD OF REVIEW
 We review a district court’s grant of summary judgment de novo. City Management Corp. v. United States Chem. Co., 43 F.3d 244 (6th Cir.1994). Summary judgment is appropriate only if the pleadings, depositions,' answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(A); Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir.2008). The burden is on the moving party to show that no genuine issue of material fact exists. Fed.R.Civ.P. 56(C)(1); Bennett v. City of Eastpointe, 410 F.3d 810, 817 (6th Cir.2005). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question is “whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law”. Id. at 251-52, 106 S.Ct. 2505.
III. ANALYSIS

A. Qualitative Intolerability

Deleon brings claims of: (1) a violation of the Equal Protection Clause of the Fourteenth Amendment, predicated under 42 U.S.C. § 1983; (2) race discrimination in violation of the Civil Rights Act of 1964, 42 .U-S.C. § 2000e et seq.; (3) national origin discrimination in violation of the same; and (4) age discrimination in violation of the Age Discrimination in Employment Act (“ADEA”). The elements for establishing an Equal Protection claim under § 1983 and the elements for establish *918 ing a violation of Title VII disparate treatment claim are the same. Lautermilch v. Findlay City Schs., 314 F.3d 271, 275 (6th Cir.2003); Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir.1988). Similarly, “[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.” Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990) (internal quotations omitted). Title VII prohibits employers from discriminating against individuals on the basis of both race and national origin. 42 U.S.C. § 2000e-2(a)(l); Davis v. Cintas Corp., 717 F.3d 476 495 (6th Cir.2013). To establish a prima facie case of intentional discrimination, a plaintiff must show that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir.2006) (citation omitted).
The ADEA generally prohibits employers from discriminating by failing or refusing to hire, discharging, or discriminating against an individual “with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age.” Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 811 (6th Cir.2011) (quoting 29 U.S.C. § 623(a)(1)). Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework. See Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir.2002). To establish a prima facie case for age discrimination under the ADEA, a plaintiff must show that (1) he was a member of the projected class, i.e., 40 years old or older, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age. Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir.1998).
Importantly, all three causes of action require that the aggrieved plaintiff show that he suffered an adverse employment action. An adverse employment action has been defined as a “materially adverse change in the terms and conditions of a plaintiffs employment.” White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 795 (6th Cir.2004) (en banc) (citation omitted). A “mere inconvenience or an alteration of job responsibilities” is not enough to constitute an adverse employment action. Id. at 797 (citing Kocsis v. Multi-Care Mgmt. Inc., 97 F.3d 876, 885-87). The Commission, and indeed the district court, relied on the proposition that “[rjeassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions.” Kocsis, 97 F.3d at 885. Nevertheless, a reassignment without salary or work hour changes, however, may be an adverse employment action if it constitutes a demotion evidenced by a “less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.” White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 795 (6th Cir.2004), aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (emphasis added).
The Supreme Court addressed the issue at length in Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). As in the instant case, the matter involved a transfer from one employment unit to another without a change in “salary benefits, title, or work hours.” Burlington *919 N., 364 F.3d at 797. The Court held that “[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case,” and “should be judged from the perspective of a reasonable person in the plaintiffs position, considering ‘all the circumstances.’ ” Burlington N., 548 U.S. at 71, 126 S.Ct. 2405. We have held that a transfer may classify as an adverse employment action where it constitutes a “constructive discharge.” Policastro v. Nw. Airlines, Inc., 297 F.3d 535, 539 (6th Cir.2002). In order for an employee to be constructively discharged, the working conditions “must be objectively intolerable to a reasonable person.” Id. (quoting Kocsis, 97 F.3d at 886) (emphasis added).
Even still, our Circuit has not foreclosed the possibility that a transfer not rising to the level of a constructive discharge might nonetheless constitute a tangible employment action. See, e.g., Keeton v. Flying J, Inc., 429 F.3d 259, 265 (6th Cir.2005); Hol-lins v. Atl. Co., 188 F.3d 652, 662 (6th Cir.1999). In those cases, the focus narrows to whether there are “other indices that might be unique to the particular situation” which could turn what would ordinarily not be an adverse employment action into one. Id. At a minimum, the employee must be able to show a quantitative or qualitative change in the terms of the conditions of employment. See Patt v. Family Health Sys., Inc., 280 F.3d 749, 753 (7th Cir.2002).
The case law thus indicates that an employee’s transfer may constitute a materially adverse employment action, even in the absence of a demotion or pay decrease, so long as the particular circumstances present give rise to some level of objective intolerability. Again, Burlington Northern is instructive. There, the Supreme Court granted a writ of certiorari after we issued an en banc opinion. The plaintiff-respondent was the only woman working at the Burlington Northern & Santa Fe Railway Company. Burlington N, 548 U.S. at 58, 126 S.Ct. 2405. Though she was initially staffed as a “track laborer,” she was later transferred to operate a forklift. Id. She was subsequently removed from forklift duty and was reassigned to perform track laborer tasks. Id. A supervisor opined that, “in fairness, a more senior man should have the less arduous and cleaner job of forklift operator.” Id. (quotations omitted). The plaintiff filed a complaint with the EEOC, and later federal court, contending that the reassignment of her duties amounted to unlawful gender-based discrimination. Id. In determining whether the plaintiff had suffered a materially adverse employment action, the Supreme Court relied on the “considerable evidence” that the new position was “more arduous and dirtier,” id. at 71, 126 S.Ct. 2405, despite the lack of a diminution in salary, benefits, or title. On this basis, the Supreme Court held that a “jury could reasonably conclude that the reassignment would have been materially adverse to a reasonable employee.” Id. In the same vein, this Court has also held that, where an employee is transferred to “some wretched backwater,” a showing of adverse action is supplied on the basis of intolerability. Mattei v. Mattei, 126 F.3d 794, 808 (6th Cir.1997).
Accordingly, insofar as we assess the level of intolerability, we conclude that Deleon has met his threshold at the summary judgment stage. Reminded that we must view the evidence in the light most favorable to the plaintiff, we conclude that Deleon has alleged an actionable claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Deleon provided evidence that he was exposed to toxic and hazardous diesel fumes on a daily basis. R. 64, Ex. 1, pp. 230-233. He testified further that he had *920 to wipe soot out of his office on a weekly basis. Id. at 231. As a result, Deleon claims that he contracted bronchitis, had frequent sinus headaches, and would occasionally blow black soot out of his nostrils. Id. at 231. The work conditions were corroborated by another employee, Timothy Landrum, who compared the air quality in the position to “sticking your head in an exhaust pipe,” and sitting “behind a city bus.” R. 64, Ex. 8, p. 31. Deleon avers that his previous position never exposed him to the level of hazard presented by the new position. R. 64, Ex. 1, p. 230. The testimony presents sufficient indication that the work environment was objectively intolerable. Kocsis, 97 F.3d at 886. Accordingly, we conclude that “the evidence presents a sufficient disagreement,” Anderson, 477 U.S. at 251-52, 106 S.Ct. 2505, as to whether the transfer was materially adverse to a reasonable person, especially in light of the factual similarities between the instant case and Burlington Northern. Here too there is evidence for the jury to consider that the new position was “more arduous and dirtier.” Burlington N., 548 U.S. at 71, 126 S.Ct. 2405.

B. Application for the Position

We must also address the issue that Deleon applied for the position before being “involuntarily” transferred. Semantically, the argument follows that an action cannot be truly “adverse” if coveted by its actor. No case within this circuit has ruled on this precise issue. Nevertheless, our sister circuits have held that the request of a transfer, and accession to the new position, does not categorically bar a finding of an adverse employment action. See, e.g., Richardson v. New York State Dep’t of Correctional Service, 180 F.3d 426, 444 n. 4 (2d Cir.1999) (finding sufficient evidence to support a conclusion that a transfer requested by plaintiff constituted an adverse employment action where there was evidence that another, more desirable, lateral job opening for which plaintiff was qualified may have existed but was not offered to the plaintiff); Sharp v. City of Houston, 164 F.3d 923, 934 (5th Cir.1999) (reversing grant of summary judgment where “[t]he jury could have found that the transfer, albeit at Sharp’s request, was a constructive demotion, the involuntary result of conditions so intolerable that a reasonable person would feel compelled to leave”); see also Huck v. Belknap, 2:06-CV-1088, 2008 WL 2247069 at *6 (S.D.Ohio May 29, 2008) (“The fact that Huck once applied for the job to which she was transferred does not as a matter of law mean that she wanted it at the time of her involuntary transfer and that it cannot be a materially adverse action”); cf. Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 876-78 (7th Cir.1999) (holding that voluntary transfer was not an adverse employment action where the work environment was not intolerable and assessing voluntariness under “constructive discharge” analysis). Accordingly, we conclude that under certain circumstances, a voluntary or requested transfer may still give rise to an adverse employment action.[2]
The record reflects that Deleon applied for the position with the intention of commanding a substantial raise and under the impression that employment benefits would inure to the benefit of his career. Such a request for “hazard pay,” which was never provided, tilts the issue as to whether Deleon really requested or wanted the position in his favor. Nor are we persuaded by the fact that Deleon technically never withdrew his request, and did not complain at the time he received the transfer. Although Deleon did not testify that he specifically told a superior that he *921 did not “like” his new job, he did testify that he approached his supervisors and asked them “why they took me out of a job [where] I was doing a good job and put me in a more hazardous job.” R. 64, p. 61. This supports Deleon’s argument that he was “set up to fail.”[3] We are leery of a holding that would require that an involuntarily transferred employee, alleging a discriminatory work environment, must demand a transfer from the very superiors engaging in the discrimination.
We emphasize that the key focus of the inquiry should not be whether the lateral transfer was requested or not requested, or whether the aggrieved plaintiff must ex tempore voice dissatisfaction, but whether the “conditions of the transfer” would have been “objectively intolerable to a reasonable person.” Strouss v. Michigan Dep’t of Corr., 250 F.3d 336, 343 (6th Cir.2001) (citation omitted). Indeed, an employee’s opinion of the transfer, whether positive or negative, has no dispositive bearing on an employment actions classification as “adverse.” See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 n. 6 (10th Cir.1998); Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449-50 (11th Cir.1998). Removing the issue of material fact on the grounds that, as a matter of law, the plaintiffs initial request to obtain the position precludes him from a finding that he suffered a materially adverse employment action • would, in our judgment, be improper. On that basis, and for the other foregoing reasons, we REVERSE the order of the District Court, and REMAND for further proceedings.

. Although Deleon originally applied for the position, his application was denied. Nine months later, Deleon was involuntarily transferred to the position. R. 64 at 110-11 (Deposition of [employer] Bartholomew: "Q. This wasn't something that he had a choice in terms of moving from area superintendent to equipment and facilities superintendent. Correct? A. Correct. Q. He had to do whatever he was told to do in terms of the transfer. Correct? A. Correct.”). The dissent notwithstanding, the facts here do not present a "voluntary application,” but rather an involuntary transfer.

. See note 1, supra.

. Deleon's assertion that he was "set up to fail” finds support in the case law as well. See Ford v. Gen. Motors Corp., 305 F.3d 545, 554 (6th Cir.2002); accord Dilenno v. Goodwill Indus, of Mid-Eastern Pennsylvania, 162 F.3d 235 (3d Cir.1998) (court erred in granting summary judgment where an employee alleged that she was transferred to a job that her employer knew she could not perform). Considering the volume of testimony at Deleon's deposition detailing the nature and extent of the racially-charged atmosphere at the Commission, in passing, we observe that it is plausible that Deleon was "set up to fail.”