NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0179n.06

No. 22-3823

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>AIMEE ERWIN,</td><td>)</td><td rowspan="12"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>     Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>HONDA NORTH AMERICA, INC.,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>     Defendant-Appellee.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

FILED
Apr 21, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

LARSEN, Circuit Judge. Aimee Erwin worked as a recruiter for Honda from 2017 until she resigned in 2020.[1] After Erwin took leave under both the Family and Medical Leave Act (FMLA) and Honda's leave policy, Honda realigned Erwin's role and temporarily revoked her flexible-work privileges. Erwin sued Honda, alleging disability discrimination and retaliation. The district court granted Honda's motion for summary judgment on the ground that Erwin had failed to show she suffered an adverse employment action. We AFFIRM.

I.

Aimee Erwin began working for Honda as a recruiter in 2017, though in total she spent about 24 years at the company in various roles. During her time as a recruiter, Erwin took leave

---

[1] Honda states in its appellate briefing that Erwin's employer was "American Honda Motor Co., Inc." not "Honda North America, Inc." Appellee Br. at 1, n.1. It thus states that it has been "improperly named." But Honda did not file any related motion in the district court and has appeared and defended this suit. To avoid any confusion, we refer to the defendant simply as "Honda."

multiple times. She took leave under the FMLA from May through June of 2017, when her father's

death caused her to suffer from depression and anxiety. Honda approved Erwin for intermittent

FMLA leave throughout 2018.

After Erwin returned from a period of FMLA leave in April 2018, she was placed on a

performance improvement plan. And in a 2017 to 2018 performance review, Erwin was given a

"Less than Successful Performance" rating because of her "lack of focus and attention to detail"

and attendance issues. In May 2018, Erwin filed an ethics and compliance complaint with Honda,

alleging inconsistent application of the FMLA policy. Honda's investigator found those claims

"unsubstantiated."

During this time, Erwin's role shifted: she first recruited only for full-time employees; in

2018, she moved to recruit for contingent positions only; and in 2019, she was recruiting for both

full-time and contingent positions. In this dual role, Erwin reported to two supervisors: Brandi

Stewart (a "team coordinator") for full-time recruiting and Casey Kirk (a "manager") for

contingent recruiting.[2] In November 2019, Erwin again sought leave under the FMLA. Stewart

reported to Honda's human resources department that she suspected Erwin was taking the leave

for non-medical reasons. Honda denied Erwin's FMLA leave request because she did not provide

timely medical documentation, but Honda still granted her leave under its company leave policy.

While Erwin was on leave, Stewart took over some of Erwin's duties; in the process,

Stewart identified deficiencies in Erwin's performance of her contingent recruiting tasks. So,

when Erwin returned to work, she was assigned to recruit for full-time positions only, a move that

did not affect her salary, title, benefits, or promotion eligibility. In addition to changing her

---

[2] As a "team coordinator," Stewart also reported to a manager.

substantive job duties, the realignment came with other changes:  Erwin reported to Stewart only; Erwin's desk was moved and she was required to work there; and she temporarily lost the ability to work remotely.  Erwin's contingent recruiting responsibilities were filled by another employee, Cheryl Crump; Crump was later recognized for her contributions to the contingency recruiting program.

Erwin was unhappy with these changes and filed another ethics complaint in January 2020. An investigator verified some of Erwin's claims, including, in relevant part, that Stewart had behaved improperly by telling other employees that Erwin was "suspended."  Stewart received "a documented coaching for inappropriately sharing confidential information."  But the investigator also found that Erwin had attendance issues unrelated to her FMLA leave, including arriving late, leaving early, and making last-minute requests for remote work and paid time off.

Erwin continued to be treated for her mental health conditions during this time, and she was approved for FMLA leave from January 21 to March 25, 2020.  Erwin resigned in March 2020, as her leave was ending.  About six months later, Stewart received Erwin's resume from a contingent staffing agency, and Erwin returned to work at Honda.

But before she returned to Honda, Erwin sued the company.  The district court granted summary judgment to Honda on all claims.  Erwin now appeals the district court's judgment as to three of those claims:  disability discrimination, retaliation for engaging in protected conduct, and FMLA retaliation.

## II.

We review the district court's grant of summary judgment de novo.  *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).  Summary judgment is proper if Honda shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To establish any of her claims, Erwin must show that she suffered an adverse employment action. *See Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566–67 (6th Cir. 2023) (disability discrimination); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (retaliation for engaging in protected conduct); *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (FMLA retaliation). In other words, Erwin must show that there was a "materially adverse change in the terms and conditions of [her] employment." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (quoting *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). In the discrimination context, such an action usually "inflicts direct economic harm," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998), and must be more than a "mere inconvenience or an alteration of job responsibilities," *Deleon*, 739 F.3d at 918 (citation omitted); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("petty slights, minor annoyances, and simple lack of good manners" are normally not enough). And in the retaliation context, adverse employment actions encompass any conduct that would have "dissuaded a reasonable worker from making or supporting [an FMLA claim]." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616–17 (6th Cir. 2019) (quoting *Burlington N.*, 548 U.S. at 68). The showing required in a retaliation case is less burdensome than in a discrimination case. *Id.* at 614; *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569–70 (6th Cir. 2019). Nevertheless, de minimis employment actions are not materially adverse for purposes of either claim. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citing *Jacklyn v. Schering-Plough HealthCare Prods. Sales*

*Corp.*, 176 F.3d 921, 930 (6th Cir. 1999) (finding as to the plaintiff's retaliation claim that "requiring plaintiff to work at home while she was recovering from out-patient surgery" was not a materially adverse employment action)).

Erwin contends that the following were adverse employment actions: she was removed from contingency recruiting; she reported only to Stewart (instead of Stewart and Kirk); she was required to work at a relocated desk under increased supervision; her remote work privileges were temporarily suspended; and Crump was promoted and commended when she took over Erwin's contingency recruiting duties. We address each in turn.

First, Erwin's reassignment to recruiting exclusively for full-time positions was not an adverse employment action. "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Burlington N.*, 548 U.S. at 71 (citation omitted). Employment shifts like Erwin's "without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). Such a reassignment "may be an adverse employment action if it constitutes a demotion evidenced by a 'less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Deleon*, 739 F.3d at 918 (citation omitted). But these factors don't help Erwin. Her title remained "recruiter," her benefits were unchanged, and both recruiting roles were "Level 2" positions that had the same opportunities for advancement. Nor are there other indicia of a demotion; Erwin herself testified that she didn't prefer contingent recruiting to full-time recruiting. So this change was just "an alteration of [Erwin's] job responsibilities," which is not an adverse employment action. *Id.* (citation omitted).

Changing Erwin's supervisor was not an adverse employment action either. She argues that Stewart was in a lower "rung" of the Honda organizational structure than Kirk and that Stewart improperly questioned her FMLA leave. But Erwin does not explain how these facts made up a "materially adverse change in the terms and conditions of [her] employment." *See id.* (citation omitted). Erwin already reported to Stewart (and Kirk), so the change Erwin alleges is simply reporting more frequently to the same manager. While Stewart had spoken poorly about Erwin, she had been corrected for this action. Stewart may not have been Erwin's first choice of manager, but Erwin has not shown that reporting to Stewart "had a materially adverse effect on [her] salary or status of employment." *Mitchell*, 389 F.3d at 183. So the change in management was not an adverse employment action.

The requirement that Erwin work in person, at her relocated desk, does not qualify in these circumstances either. The record shows that Erwin's suspension from remote work was only temporary, while she completed training. Because the revocation was temporary and "no economic loss occurred," Erwin's loss of remote work capability is "properly characterized as a *de minimis* employment action that does not rise to the level of a materially adverse employment decision." *Bowman*, 220 F.3d at 462. As for her desk being moved, Erwin doesn't explain the significance; she simply notes that it was moved. And although she complains about increased supervision, even "intense supervision" is not an adverse employment action where, as here, Erwin was not "terminated or demoted," and did not have her "pay rate reduced, benefits lessened, or responsibilities diminished." *Broska v. Henderson*, 70 F. App'x 262, 267 (6th Cir. 2003).

Erwin's last contention—that Crump was recognized for her contributions after taking over Erwin's role—also fails to establish an adverse employment action. It may well have been "adding

salt to the wound" for Erwin to see Crump recognized. But such complaints do not rise to the level of an adverse employment action. *See White*, 364 F.3d at 797.

Finally, Erwin was not constructively discharged. Constructive discharge occurs when an employer creates "an objectively intolerable work environment to deliberately force [an] employee to resign." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (citation omitted). "[I]ntolerability is a demanding standard." *Id.* The conditions must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (citation omitted). "[C]riticism and negative feedback do not suffice." *Id.* So Erwin's fear of returning to work because she might face increased supervision and critical feedback does not show her work environment was intolerable. Erwin has failed to show that a "reasonable person" would find the "conditions objectively intolerable." *Policastro*, 297 F.3d at 540. And Erwin offers no evidence that Honda acted "deliberately" to "force" her to resign. *See Tchankpa.*, 951 F.3d at 814. Even when construing the facts in Erwin's favor, she has not shown she was constructively discharged.

Because Erwin has not shown that she suffered an adverse employment action or was constructively discharged, we need not address the other elements of her claims, and her claims for disability discrimination and retaliation therefore fail.

\* \* \*

We AFFIRM the district court.