NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0027n.06

Case No. 25-1446

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CARLOTTA COLLINS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF DETROIT, MICHIGAN, dba Detroit | ) | MICHIGAN |
| Water and Sewerage Department; MIHAI | ) | |
| FACAEANU; CARLOS VAZQUEZ, | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before:  COLE, MATHIS, and HERMANDORFER, Circuit Judges.

**MATHIS, Circuit Judge.**  Carlotta Collins sued her employer, the City of Detroit, and her supervisors, Mihai Facaeanu and Carlos Vazquez, alleging that they discriminated against her based on her race and sex, retaliated against her for complaining about this alleged discrimination, and created a hostile work environment.  While her lawsuit was pending, she was fired.  So she amended her complaint to add new claims for retaliation and a violation of Michigan's Whistleblower Protection Act ("WPA").  The district court granted summary judgment to the defendants.  We affirm.

## I.

## A.

Carlotta Collins has worked for the City of Detroit since 2002.  She started as a junior clerk processing paper in the Income Tax Division, and she eventually transferred to the Detroit Water

and Sewerage Department ("DWSD"). When the City terminated her, Collins was working as a level three customer-service specialist in DWSD's Finance Division. Facaeanu was the manager of the division, and Vazquez was Collins's direct supervisor. As a customer-service specialist, Collins was a union member.

Collins alleges that Facaeanu, Vazquez, and the City engaged in a years-long pattern of discriminating and retaliating against her that began in August 2021. That month, Collins and a coworker met with Facaeanu to talk about the distribution of work. During their conversation, Collins asked Facaeanu if he had ever asked about his team's happiness. According to Collins, Facaeanu reacted with hostility: "Carlotta, what is this with you? Didn't we just give you a 5 rating on your evaluation? Now you're not happy! I think you have a personal vendetta with me!" R. 32-3, PageID 718. Facaeanu testified that he talked to Collins about reassigning tasks but does not recall saying anything beyond that.

The next day, on August 25, Collins met with Facaeanu again. She commented on his hostility from the day before and complained that he mistreated her because of her race (black) and sex (female). Collins asserts that Facaeanu dismissed her concerns and belittled her when she asked to be treated fairly. It is unclear what led to that request—during her deposition, Collins did not provide any instances of being treated unfairly before the August 24 meeting. She directed most of her complaints at Facaeanu's "subpar" leadership. R. 32-2, PageID 659. Facaeanu testified that he did not recall the specifics of the conversation, only that there were issues with Collins's behavior, and they met frequently to discuss them.

The August 25 meeting went so poorly that Collins brought her union representative to her weekly meeting with Facaeanu and Vazquez on September 8. According to Collins, Facaeanu

threatened to end the meeting because he thought the union's involvement in matters unrelated to employee discipline was inappropriate. Facaeanu did not remember saying that.

At the September 8 meeting, Collins complained about how Facaeanu treated her during their two prior conversations. She contends that he was dishonest about his behavior, which caused her to become frustrated and increasingly emotional. She left the meeting abruptly to calm herself down. Facaeanu testified that Collins stormed out of the room, slammed the door closed, and started yelling.

The next month, Facaeanu issued Collins a corrective-action notice for failing to communicate respectfully and follow directives at the September 8 meeting. According to Collins, she and her union representative were "blind-sided." R. 32-3, PageID 719. Collins thought Facaeanu was retaliating against her for complaining about mistreatment and involving her union. The union grieved the disciplinary action on her behalf, but DWSD denied the grievance for lack of evidence rebutting Facaeanu's and Vazquez's accounts of the incident.

Despite this series of confrontations, things settled down at the end of 2021 and the beginning of 2022. But tensions ramped back up in March 2022, when Collins started asking Vazquez about her performance evaluation. Collins asserts that she asked Vazquez three or four times for a date to complete her evaluation without success. Vazquez eventually started the evaluation around March or April 2022, and it was largely unfavorable to Collins. He rated her overall performance minimally satisfactory and gave her low scores in categories covering her integrity, ethics, professionalism, credibility, dependability, and reliability. This contrasted sharply with her 2021 performance evaluation, in which she received high scores across the board. Vazquez never met with Collins about the evaluation. And she alleges that he delayed giving it to her until June.

At the end of March, Collins was involved in another workplace incident. A member of the collections department came to talk to a member of the billing team, Rama Valecha. Collins found their interaction disruptive. According to her coworker, Danielle Wooten, Collins "explo[ded], rose up out of her seat in anger and left the office space" during the interaction. R. 35-7, PageID 1022. Wooten and Valecha complained to Vazquez and Facaeanu about the incident. But Vazquez and Facaeanu never followed up with Collins to get her side of the story. They immediately wrote her up for the incident and, on April 11, suspended her for three days.

Collins took leave from May 2 to May 31, 2022. During that time, she filed a complaint with the City's human-resources department. She alleged that Facaeanu discriminated against her because of her sex and in retaliation for complaining about his unfair treatment. She cited as evidence the incidents described above. She also filed complaints with the Michigan Department of Civil Rights, the Equal Employment Opportunity Commission, and the City's Civil Rights, Inclusion and Opportunity Department.

Collins tried to return from leave on June 1. But human resources had not yet cleared her to return. The City cleared her to return the next day, June 2. Because she had been gone for at least 30 days, the human-resources representative asked her to take a drug test in compliance with City policy. The policy says that only employees who are absent for more than 30 days must test for drugs. The parties dispute whether Collins was truly gone for more than 30 days, given that she tried to return on the 31st day—June 1—and was turned away. Regardless, Aisha Perry, the human-resources supervisor, testified that the City's regular practice is to require a drug screening for any employee who is absent for *at least* 30 days.

Shortly after Collins returned from leave, she received her negative performance review from Vazquez. She asserts that Vazquez gave her such low scores in retaliation for filing

complaints against Facaeanu. But Collins denied any connection between the low performance evaluation and either her race or gender. Because her evaluation was so low, and because she had been suspended for three days in April, the City denied Collins a merit-based wage increase that fiscal year. She does not believe that the City denied her a merit increase because of her race or sex.

In June 2023, while Collins was still working in DWSD, she filed this lawsuit against Facaeanu, Vazquez, and the City. Shortly after filing suit, she began asking about an in-series promotion. She first asked Vazquez about it in July, and he responded that merit increases had already been distributed for that fiscal year. She followed up about it twice afterwards to no avail. She believes Vazquez refused to consider the promotion because of her sex and in retaliation for filing the lawsuit. But she does not believe that it had anything to do with her race.

A year later, while this lawsuit was still pending—and just three days after Collins deposed Facaeanu—the City fired her for falsifying her time records. On May 22, 2024, Collins worked remotely without permission. She had a time-sensitive assignment due by noon that day. Despite logging four hours of work, Collins did not complete that task. The next day, Collins requested to work another half day. But DWSD denied her request because she had no more available time off. Collins left work anyway. The City terminated her a day later.

**B.**

Collins originally asserted three claims under 42 U.S.C. § 1983 against Vazquez and Facaeanu in their individual and official capacities: (1) discrimination based on her race in violation of the Equal Protection Clause, (2) discrimination based on her gender in violation of the Equal Protection Clause, and (3) retaliation for complaining about this alleged discrimination in violation of the First Amendment. She also asserted claims against them and the City for creating

a hostile work environment and for discrimination on the basis of race and sex in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

The defendants sought summary judgment. Collins consented to the dismissal of her First Amendment retaliation claim, but she asked the district court to deny the remainder of the motion and grant her leave to file an amended complaint. The court dismissed the First Amendment retaliation claim with prejudice, denied summary judgment on the other claims, and permitted Collins to file an amended complaint.

Collins's amended complaint asserted the same claims as before—including the First Amendment retaliation claim that the court dismissed with prejudice—and added factual allegations about her termination. She also alleged a new retaliation claim under the ELCRA and a violation of Michigan's WPA. The defendants again sought summary judgment. This time, the district court granted it in full. Collins asked the district court to reconsider its order, but the court refused. This appeal followed.

## II.

We review a grant of summary judgment de novo. *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 368 (6th Cir. 2024). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507 (6th Cir. 2021).

## III.

Collins argues that the district court erred in granting summary judgment to the defendants on her four discrimination claims, her ELCRA retaliation claim, her hostile-work-environment claim, and her WPA claim. We review each in turn.

**A.**

We begin with the federal- and state-law discrimination claims, which all allege disparate treatment based on either race or sex. Because they all fail for the same reason, we address them together.

A public employee may seek redress under 42 U.S.C. § 1983 for a deprivation of a constitutional right by her employer. "To succeed on a § 1983 claim, a plaintiff must first identify a constitutional right, then show that a person acting under the color of state law deprived him of that right." *Novak v. Federspiel*, 140 F.4th 815, 820 (6th Cir. 2025) (per curiam) (quotation omitted). Collins claims that the defendants discriminated against her based on her race and sex in violation of the Equal Protection Clause.

Michigan employees have another way to redress discrimination in the workplace—the ELCRA. *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 837 (6th Cir. 2024). To succeed on an ELCRA discrimination claim, a plaintiff must prove that her employer discriminated against her with respect to her compensation or the terms, conditions, or privileges of her employment because of a protected characteristic. Mich. Comp. Laws § 37.2202(1)(a). Collins also brings race- and sex-discrimination claims under the ELCRA.

We generally review disparate-treatment claims rooted in the Equal Protection Clause under the same framework we apply to Title VII discrimination claims. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917–18 (6th Cir. 2014). And we do the same for ELCRA discrimination claims. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

A plaintiff may introduce two different types of evidence to support a discrimination claim. She can offer direct evidence of discriminatory animus, which "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Lowe v.*

*Walbro, LLC*, 147 F.4th 601, 608 (6th Cir. 2025) (quotation omitted). Or she can offer circumstantial evidence of discrimination by showing she "suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024) (quotation omitted).

Collins relies on circumstantial evidence. So we assess her discrimination claims under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973). Under this approach, Collins carries the initial burden to prove a prima facie case of race and sex discrimination. *See id.* at 802. To satisfy her burden, Collins must show that she: (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for her position, and (4) was either replaced by someone outside of her protected classes or treated differently than similarly situated white or male employees. *See Moore*, 113 F.4th at 622. If she establishes a prima facie case, the burden shifts to the defendants to identify a legitimate, nondiscriminatory reason for their actions. *Id.* at 623. If they can do so, then the burden shifts back to Collins to show that the defendants' reason is pretextual. *Id.*

Collins's claims fail at the prima facie stage. The defendants do not contest that Collins is a member of a protected class, was qualified for her position, and suffered adverse employment actions. As such, this dispute hinges on whether Collins has produced enough evidence about either being replaced by a white or male employee or being treated differently than a similarly situated white or male employee. She has not.

First, Collins has not identified a white or male employee that replaced her after the City terminated her. In her reply brief, she states that her termination was reversed through arbitration.

Second, there is no evidence that Collins was treated differently than similarly situated nonminority employees. A similarly situated employee need only be "similar in all of the *relevant*

aspects." *Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850, 858 (6th Cir. 2025) (quotation omitted). To that end, "all of the relevant aspects" of Collins's situation must be "nearly identical to those of the comparable employee's employment situation." *See O'Donnell v. City of Cleveland*, 838 F.3d 718, 727 (6th Cir. 2016) (citation modified). This means that "the comparables must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation modified).

For her sex-discrimination claim, Collins asserts that she was not treated the same as Facaeanu, Vazquez, and Lonnie McCollum. Facaeanu and Vazquez are members of DWSD's management team. Collins is not, so she is not similarly situated to them. And Collins made no effort to show how she is similarly situated to McCollum.

She does not identify any specific comparator for her race-discrimination claim.

Curiously, Collins suggests that it was the defendants' job to show that they treated similarly situated white or male employees the same as they treated her. We disagree. Collins bore the burden to make out a prima facie case of discrimination, and she has not done so. Indeed, she admitted that several actions taken by the defendants had nothing to do with her race or sex. During her deposition, Collins testified that the poor performance evaluation, lack of merit increase and promotion, and alleged disrespect during meetings had nothing to do with her race. She also said that neither the poor performance evaluation nor the lack of merit increase resulted from her sex.

Thus, the district court did not err in granting summary judgment to the defendants on Collins's discrimination claims.

**B.**

Next, we consider Collins's ELCRA retaliation claim. In her complaint, Collins alleged that the defendants took several adverse employment actions against her in retaliation for complaining about their allegedly discriminatory practices. But in opposition to the defendants' summary-judgment motion, Collins defended only her claim for retaliatory termination. The district court narrowed its analysis accordingly. We follow suit. To the extent Collins attempts to revive a retaliation claim for the drug testing, suspension, performance evaluation, and general workplace hostility, those claims are forfeited. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614–15 (6th Cir. 2014).

Just like the ELCRA prohibits discrimination, it also prohibits retaliation for complaining about discrimination. Mich. Comp. Laws § 37.2701(a). To prove her ELCRA retaliation claim using circumstantial evidence, Collins must show that: (1) she engaged in protected activity, (2) the defendants knew she engaged in that activity, (3) the defendants took a materially adverse action against her, and (4) they did so because of her protected activity. *See Laster*, 746 F.3d at 730. If Collins establishes a prima facie case of retaliation and the defendants articulate a legitimate, nonretaliatory reason for her termination, then Collins must show that this proffered reason is simply a pretext for retaliation. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).

We assume without deciding that Collins established a prima facie case of retaliation. The defendants proffered a legitimate reason for firing her: she worked from home without permission, lied about working four hours that day, and then left work early the next day without permission. Collins's claim fails because she has not shown that this justification is pretextual.

The pretext question is straightforward: Are the defendants telling the truth about why they fired Collins? Collins can attack the credibility of the defendants' justification in three different ways. First, she can show that their proffered reason has no basis in fact. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Next, she can prove that the defendants' stated reason did not actually motivate their decision. *See id.* And finally, she can present evidence that the defendants could not terminate her employment based on their proffered reason. *See id.*

Collins has not chosen any of these paths. Indeed, she does not substantively address pretext at all in her opening brief. Her failure to do so dooms her retaliation claim. True, Collins attempts to make a pretext argument in her reply brief. But we do not consider arguments raised there for the first time. *See Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004).

## C.

Collins has also forfeited review of her hostile-work-environment and WPA claims. "Where issues are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, we consider them forfeited." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (citation modified). Collins mentions "hostile work environment" only once in her opening brief—when she identifies her claims. D. 23 at p.7. She references her WPA claim in the summary-of-the-argument section of her opening brief and briefly mentions its legislative aims in her argument. She failed to develop arguments supporting either claim. In her reply brief, Collins asks us to assemble arguments for these claims based on her recitation of the facts. We decline. *See Am. Trim*, 383 F.3d at 477.

## IV.

Finally, Collins argues that the district court's grant of summary judgment violates her Seventh Amendment right to a jury trial. The Supreme Court has rejected this very argument.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (citing *Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 319–21 (1902)).  So do we.

## V.

For these reasons, we **AFFIRM** the district court's judgment.